# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-1361

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Deborah Marie Dalton, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 16, 2004
Filed: April 13, 2005

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

A grand jury indicted Deborah Marie Dalton on one count of conspiring to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 846, punishable by ten years to life in prison. The government filed notice under 21 U.S.C. § 851 of its intent to seek an increased statutory penalty of twenty years to life imprisonment based on Dalton's prior conviction for a felony drug offense. See 21 U.S.C. § 841(b)(1)(A). Dalton pleaded guilty. The presentence report (PSR) calculated a Guidelines imprisonment range of 240-262 months, with

the bottom of the range determined by the statutory minimum of 240 months in prison because of her prior felony drug offense.

At sentencing, the government filed substantial-assistance downward-departure motions under both U.S. Sentencing Guidelines Manual (USSG) § 5K1.1 and 18 U.S.C. § 3553(e). The government described Dalton's assistance and recommended a 10% departure. The district court sentenced Dalton to 60 months in prison and ten years of supervised release, representing a 75% departure from the mandatory minimum sentence of 20 years (240 months) in prison she faced absent the government's motions.

The government appeals the extent of the district court's downward departure, and for the reasons discussed below, we reverse and remand for resentencing.

I.

Unobjected-to portions of the PSR recite the following facts about Dalton's offense. When police executed a search warrant at her residence on March 19, 2002, they recovered a digital scale and 336.7 grams of methamphetamine mixture. Dalton's son testified before a grand jury that Rene Hernandez supplied his mother with methamphetamine, and he identified five people to whom Dalton resold the methamphetamine. Police debriefed Hernandez, who stated that he had regularly sold one-ounce quantities of methamphetamine to Dalton and her then-boyfriend, Jeff DeWolf, prior to Christmas of 2001. After Christmas of 2001, he sold four-ounce quantities to Dalton and DeWolf every other day. Later, after DeWolf was arrested, Hernandez regularly sold eight-ounce quantities to Dalton. Hernandez estimated that he sold Dalton and DeWolf a total of three pounds of methamphetamine during the time they were together, and that he sold Dalton a total of ten pounds of methamphetamine during the time she was acting on her own.

Police debriefed Dalton, who admitted that before she met Hernandez, she had bought between six and eight ounces of methamphetamine from other sources during mid-to-late 2001. Then, after meeting Hernandez, Dalton and DeWolf started buying an ounce or two of methamphetamine from him once or twice a week. The quantities they purchased escalated to one to four ounces at a time. After she separated from DeWolf after New Year's Day of 2002, Dalton purchased four-ounce to eight-ounce quantities from Hernandez once each week from January through March 2002. She identified eight people to whom she had sold methamphetamine.[1]

Unobjected-to portions of the PSR recite the following facts about Dalton's criminal history. In November 1996, she was arrested for possessing cocaine, for which she was later convicted in Iowa state court. In December 1997 and again in August 1998, she was arrested for delivering methamphetamine, for which she was later convicted in Iowa state court. When she was arrested for the instant offense, Dalton was on parole for the second time from the ten-year prison sentence she had received for the two Iowa state court methamphetamine-delivery convictions. Her prior stint on parole had ended in the revocation of her parole in May of 2002 after the warranted search of her residence in March 2002 had uncovered three-fourths of a pound of methamphetamine. With seven criminal history points, she had a Category IV criminal history.

Dalton was arrested for the instant offense on March 12, 2003. After being arraigned on April 1, she was released on bond with pretrial supervision. During her first two months on pretrial release, she cooperated with the government by

---

[1] The PSR added the quantities listed above and calculated that Dalton was responsible for over six kilograms of methamphetamine, which would have resulted in a base offense level of 36 and a Guidelines imprisonment range of 262-327 months. However, the parties had stipulated in the plea agreement that her base offense level would be 34 based on a quantity of one-and-a-half to five kilograms of methamphetamine, and the PSR abided by this lower figure.

debriefing and testifying before a grand jury. However, Dalton began violating the conditions of her release in June by failing to report to her probation officer, failing to present herself for drug testing, failing to maintain or actively seek employment, and failing to report a change of address. A warrant was issued for her arrest. Dalton was arrested in September 2003, and her pretrial release was revoked. At sentencing, she received a two-level enhancement for obstructing justice by absconding from pretrial supervision, but it was offset by a two-level reduction she received for acceptance of responsibility.[2]

When she was arrested for the instant offense, Dalton was forty-one years old. She reported that she was abused by her stepfather when she was a child, she was abused by her then-husband when she was in her late teens and early twenties, she was abused by her then-boyfriend when she was in her early twenties, and she was abused by DeWolf in the recent past. Dalton began using methamphetamine in 1989 and has struggled with her addiction to it ever since. She earned a degree in practical nursing in 1992, but she lost her nursing license in 1998 due to her methamphetamine-delivery convictions. Dalton has worked as a grocery stocker, a housekeeper, a telemarketer, a painter, a cleaner, and a meat packer.

## II.

As recited above, at sentencing the government filed substantial-assistance downward-departure motions under both § 5K1.1 and § 3553(e). The government recommended a 10% departure and described Dalton's assistance as follows. After she was arrested, she timely and truthfully proffered information that helped in obtaining indictments against two people. While she was on pretrial release, she

---

[2] After the government noted at sentencing that Dalton had received "somewhat of a break already in regards to acceptance," the district court commented: "You could have fought the acceptance of responsibility I think and probably prevailed under current Eighth Circuit law, so she got a break there." (Sent. Tr. at 4-5, 14.)

testified against them before a grand jury. Dalton was a corroborative witness, not a primary witness, because the two people had confessed by this point. She provided information about a third person, but there was no need for her to go before a grand jury about him because he signed a preindictment plea agreement. Dalton's cooperation with the government ended in her third month of pretrial release, however, when she absconded. The government expressed optimism that Dalton could receive a sentence reduction in the future under Federal Rule of Criminal Procedure 35(b) if the government was able to make use of information she had provided about two other people.

The district court departed downward by 75% to a sentence of sixty months in prison and ten years of supervised release. It did not explain on the record its reasons for departing to that extent, except for the following comments:

> So I've given you a huge break in your sentence, and the test will be when you get out and you get out on supervised release because I believe in giving people an opportunity and giving them a break.
>
> . . . .
>
> You know, I did give you a huge break. I'm not a big fan of the United States Sentencing Guidelines, and I made my decision based on your substantial assistance, and I hope you do well and time passes quickly for you, you can take advantage of some of the educational opportunities. . . . [M]aybe you can get your nursing license back and go do good things this time around and make better choices in men and friends and recreational activities.

(Sent. Tr. at 17-18.) The government appeals the extent of the departure.

## III.

There is no dispute that the district court's basis for departing from the Guidelines, substantial assistance by the defendant, is a permissible factor. The only question is whether the sentence imposed by the district court "is unreasonable, having regard for . . . the factors to be considered in imposing a sentence, as set forth in [18 U.S.C. § 3553(a)]; and . . . the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of [18 U.S.C. §] 3553(c)." See United States v. Booker, 125 S. Ct. 738, 765 (2005) (quoting 18 U.S.C. § 3742(e)(3) (1994) (emphasis removed)). Our standard of review in this case is thus unaffected by the United States Supreme Court's recent decision in Booker, which extended unreasonableness–the pre-PROTECT Act standard for reviewing departure sentences–to the review of all sentences. See Booker, 125 S. Ct. at 765-66. For the following reasons, we conclude that the district court abused its discretion by imposing an unreasonable sentence on Dalton. See United States v. Yahnke, 395 F.3d 823, 826 (8th Cir. 2005) (equating a sentence that is "reasonable" with a sentence that is "not an abuse of discretion"); United States v. Thornberg, 326 F.3d 1023, 1026 & n.4 (8th Cir. 2003) (a district court's determination that a sentence is reasonable is reviewed for abuse of discretion).

We assume for the sake of argument that, at the time of sentencing, the district court was entitled to take into account factors other than Dalton's substantial assistance when departing. See United States v. Anzalone, 148 F.3d 940, 942 (8th Cir.) (the district court may weigh factors other than the substantial assistance provided by the defendant in exercising its downward-departure discretion), reinstated, 161 F.3d 1125 (8th Cir. 1998); but see United States v. Stockdall, 45 F.3d 1257, 1261 (8th Cir. 1995) (only factors relating to the defendant's cooperation should influence the extent of a substantial-assistance departure). After Booker, district courts must consult the Guidelines and take them into account, but they are

certainly free to consider all of the other factors listed in § 3553(a).  See Booker, 125 S. Ct. at 766-67.

The district court imposed a sixty-month sentence for basically two reasons. First, it placed a higher value on Dalton's assistance than the government did. Second, it viewed her as a somewhat atypical drug offender with a good chance at being rehabilitated.[3]

When determining the appropriate extent of a substantial-assistance downward departure, the district court should consider the following five factors:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; [and] (5) the timeliness of the defendant's assistance.

USSG § 5K1.1(a).  "Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain."  USSG § 5K1.1, comment. (n.3).

---

[3] If the district court's comment that it was "not a big fan of the United States Sentencing Guidelines" expressed a third reason for the extent of the departure, then that would have provided an independent basis to remand for resentencing pre-Booker.  Under the mandatory Guidelines system, when a district court made such a comment in sentencing a defendant, it created "uncertainty about whether the district court carried out its duty to follow and apply the Guidelines," because disagreement with the Guidelines was  not a valid consideration.  See United States v. Haversat, 22 F.3d 790, 798 (8th Cir. 1994).

These five factors are not "an exhaustive list," and the district court is not required "to examine each of the listed factors in § 5K1.1 on the record and explain exactly just what weight it gives to each in its departure decision." United States v. McCarthy, 97 F.3d 1562, 1577 (8th Cir. 1996), cert. denied, 519 U.S. 1139 and 520 U.S. 1133 (1997). Nonetheless, what the district court *is* required to do is act reasonably when exercising the discretion it is given, and we will not infer a reasoned exercise of discretion from a record that suggests otherwise or is silent.

Here, we see no elucidation of why the district court valued the significance and usefulness of Dalton's assistance so much more highly than the government did. Likewise, there is no indication that the district court gave substantial weight to the government's evaluation of the extent of Dalton's assistance before deciding to depart to a much greater extent. We are persuaded that the district court went beyond the permissible bounds of its discretion by imposing a sixty-month sentence, given that there is no quarrel about the timeliness, truthfulness, completeness, and reliability of the information she provided; there is no factual dispute about the nature and extent of her assistance; and there is no suggestion that she suffered any injury or was put in any danger by assisting the government.

An extraordinary reduction must be supported by extraordinary circumstances. Here, Dalton's cooperation was limited to proffering information about a handful of people and serving only as a corroborative witness before a grand jury against two of them. She did not provide critical information, implicate a large number of people, or serve as a primary government witness against anyone. Nor did she place herself in any danger or work as an undercover informant. To the contrary, she limited her usefulness to the government by absconding while on pretrial release. Additionally, she trafficked in more than six kilograms of methamphetamine during a year and a half while still on parole from prior drug-trafficking convictions, demonstrating that she has no particular amenability to rehabilitation. See United States v. Rogers, 400 F.3d 640, ___ (8th Cir. 2005). There simply are no extraordinary circumstances here

-8-

to render reasonable the extraordinary sixty-month sentence imposed. Cf. United States v. Enriquez, 205 F.3d 345, 348 (8th Cir.) (describing a 50% downward departure granted by the district court as "an extraordinary sentence reduction" where the government recommended a 20% departure), cert. denied, 531 U.S. 890 (2000); Haversat, 22 F.3d at 797-98 (reversing a five-level downward departure as unreasonable).

Although a district court has broad discretion in determining the extent of a downward departure, that discretion is not without limits, and appellate review is not an empty exercise. In Booker, the Supreme Court expressly recognized "Congress' intent to provide appellate review" and explained that, by making reasonableness the standard for reviewing sentences, it was not "thereby eliminat[ing] appellate review." See 125 S. Ct. at 766. The record in the case at bar leaves this panel with the definite and firm conviction that the district court here exceeded the permissible bounds of its discretion and imposed an unreasonable sentence by sentencing Dalton to sixty months in prison. Accordingly, we reverse the judgment of the district court and remand this case for resentencing.

_____