**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Charles Aaron GREEN, Defendant–
Appellee.**

**No. 05–4270.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 28, 2005.

Decided Feb. 6, 2006.

---

**ARGUED:** Christopher John Romano, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for Appellant. Martin Gregory Bahl, Office Of The Federal Public Defender, Baltimore, Maryland, for Appellee. **ON BRIEF:** Allen F. Loucks, United States Attorney, Baltimore, Maryland, for Appellant. James Wyda, Federal Public Defender, Greenbelt, Maryland, for Appellee.

Before WIDENER, NIEMEYER, and GRÉGORY, Circuit Judges.

Vacated and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WIDENER and Judge GREGORY joined.

## OPINION

NIEMEYER, Circuit Judge.

Charles Aaron Green pleaded guilty to conspiracy to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846. Although Green qualified as a career offender under U.S.S.G. § 4B1.1, having two prior felony convictions for drug trafficking, the district court decided not to sentence Green as a career offender because that status "does not fit Mr. Green."

The government appealed, and we review the district court's sentence "for unreasonableness." *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 765–66, 160 L.Ed.2d 621 (2005); *United States v. Hughes*, 401 F.3d 540, 546–47 (4th Cir. 2005). Concluding that Green's sentence resulted from an incorrect application of the Sentencing Guidelines, we vacate the sentence and remand the case for resentencing under the principles set forth below. *See* 18 U.S.C. § 3742(f)(1).

### I

On March 18, 2003, an undercover Baltimore County (Maryland) police detective met with an unnamed drug dealer at a restaurant in White Marsh, Maryland, to purchase cocaine. The dealer indicated that his supplier would arrive soon with the drugs. Surveillance officers witnessed Charles Green arrive and meet briefly with the dealer, who then returned to the detective with 27 grams of cocaine powder, which he sold to the detective. The detective arranged to meet with the dealer again on March 27, 2003 to purchase nine ounces of cocaine base.

On March 27, 2003, when Green arrived at the designated location, he was arrested and nine ounces of cocaine base were recovered from his vehicle. A search of his residence yielded an additional 14 grams of cocaine base, paraphernalia used to cut and package cocaine base, and $3500 in cash. After being advised of his *Miranda* rights, Green told the officers that he had begun buying cocaine in 2002 in quarter-

kilogram quantities, and had progressed thereafter to buying larger amounts for resale.

Green was indicted in two counts, charging him with conspiring to distribute at least 50 grams of cocaine base, in violation of 21 U.S.C. § 846, and possessing at least 50 grams of cocaine base with intent to distribute it, in violation of 21 U.S.C. § 841. Pursuant to a plea agreement, Green pleaded guilty to the conspiracy count. The agreement provided that, given the amount of drugs involved, the base offense level under the Sentencing Guidelines was 34, but that if the sentencing court found Green to be a career offender under U.S.S.G. § 4B1.1(B), the base offense level would be 37 and the criminal history category would be VI.

At sentencing, the parties agreed that Green qualified as a career offender: he was 28 years old at the time he committed the offense in this case; the instant offense is a felony involving controlled substances; and Green had two prior convictions for controlled substance offenses as an adult. *See* U.S.S.G. § 4B1.1. Green's two prior convictions were Maryland state convictions for possession with intent to distribute illegal drugs. On October 10, 1995, a Harford County Joint Narcotics Task Force searched Green's apartment, finding Green in a living room chair next to 25 plastic baggies of cocaine and finding one-and-a-half ounces of cocaine elsewhere in his apartment. Green was indicted in five counts charging him with possession with intent to distribute cocaine and related violations. Apparently, he was released following his arrest, because he was arrested again two weeks later.

On October 25, 1995, Green was arrested again in Harford County and charged in four counts for controlled dangerous substances violations and resisting arrest. This arrest involved Green's possession of 43 ziplock baggies of cocaine. Apparently Green remained incarcerated after this arrest until his sentencing in January 1997.

On January 6, 1997, Green pleaded guilty to one count of possession with intent to distribute cocaine on October 10, 1995, and to one count of possession with intent to distribute controlled dangerous substances on October 25, 1995. With respect to the October 10 offense, Green was sentenced to 20 years' imprisonment, which was suspended, and to 5 years' probation. With respect to his October 25 offense, Green was sentenced to 12 years' imprisonment, the service of which commenced with his second arrest on October 25, 1995.

On March 29, 2000, Green was paroled and began parole supervision for the remainder of his 12–year term, to continue until October 24, 2007. At that time, he also began his 5–year probation for his October 10, 1995 conviction.

At sentencing in this case, Green's counsel argued that even though Green qualified for career offender status, that status over-represented Green's criminal history, and he asked the court "to simply depart down to the same level he would be at as if he was not a career offender." Counsel argued that because Green's two prior offenses were close in time and involved relatively small amounts of cocaine, they constituted an aberration in Green's history, which contained no other convictions. Counsel for Green also requested downward departures for acceptance of responsibility and substantial assistance to the government.

The government opposed Green's request not to be sentenced as a career offender, contending that Green was getting a break even as a career offender because the government did not provide Green with notice under 21 U.S.C. § 851

relating to his prior convictions. Had it done so, Green would have faced a mandatory life sentence. *See* 21 U.S.C. § 841(b). Counsel also noted that Green's prior offenses involved enough cocaine that if Green were sentenced under federal law, he would have faced a mandatory minimum sentence of 20 years. Finally, the government noted that after his arrest on the federal charges in 2003, Green was released, over the government's objection, to a half-way house, from which he fled, remaining a fugitive for two months before he was rearrested.

The district court acknowledged that "Mr. Green technically fits within the [career offender] section," but that section "does not fit Mr. Green." The court believed that the career offender section was directed at recidivists who have demonstrated that they will make no effort to live a law-abiding life and who have no intention of making an honest living. The court explained that Green was not from this mold. The court noted first that even though Green's two prior state offenses were not formally consolidated, they were close in time, and the state court "essentially treated them as part of the same offense." In essence, the court found that the proximity of the offenses in time demonstrated "a lack of willingness to re-offend at two distinct periods of time." The court also noted that after Green was released on parole in 2000, he made "significant efforts to obtain lawful employment," but was frustrated in this attempt. The court stated this "real effort" was uncharacteristic of the typical career offender, who makes no attempt to lead a law-abiding life. In addition, the court found that Green did not use guns or violence in his crimes, making him "atypical of the typical drug, crack cocaine defendant." Finally, the court noted that Green was still capable of making a contribution to society once released, based on his young age,

education, and family support. The court thus did not sentence Green as career offender, but rather as having a criminal history category of III.

In addition, the court granted Green a three-point reduction in his offense level for acceptance of responsibility and a four-level reduction in his offense level under U.S.S.G. § 5K1.1 for substantial assistance. As a result, the court concluded that under the Sentencing Guidelines, Green had a total offense level of 27 with a criminal history category of III, resulting in a guideline range of 87 to 108 months' imprisonment. The court sentenced Green to 87 months' imprisonment.

From the judgment entered, the government filed this appeal, contending that the sentence was unreasonable.

## II

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court held that an application of the Sentencing Guidelines in which the district court enhanced the defendant's sentence based on facts it found during the sentencing proceeding violated the Sixth Amendment. Concluding that the mandatory application of the Sentencing Guidelines is what offended the Sixth Amendment jury right, the Court observed:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.... Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the Guidelines binding on district judges.... The

Guidelines as written, however, are not advisory; they are mandatory and binding on all judges.

*Booker,* 125 S.Ct. at 750. Based on its conclusion that Congress would have wished to continue the Guidelines system even if the Guidelines were not mandatory, the Court struck down 18 U.S.C. §§ 3553(b)(1) and 3742(e), which had made the Sentencing Guidelines mandatory. As so modified, the court concluded that the Guidelines are "effectively advisory," *id.* at 757, and that appellate courts must now review sentences "for unreasonableness," *id.* at 765.

With §§ 3553(b)(1) and 3742(e) now excised from the Sentencing Reform Act of 1984 and our review of sentences directed to unreasonableness, the questions arise in this case as to (1) the extent to which the district court must be guided by the Sentencing Guidelines and (2) the meaning of an appellate review for unreasonableness. We address these questions seriatim.

### A

Even though it is now a given that the Sentencing Guidelines are advisory, district courts are not left with unguided and unbounded sentencing discretion. *Booker* provides that they "must consult those Guidelines and take them into account when sentencing." *Id.* at 767 (citing 18 U.S.C. § 3553(a)(4), (5)). In addition, district courts still must follow the commands of 18 U.S.C. § 3553 (with subsection (b)(1) excised), as informed by the congressional policies expressed in 28 U.S.C. §§ 991 and 994.

■ When these statutory requirements are brought together, they may be summarized as four overarching directives in sentencing, some mandatory and some advisory. *First,* the district court is commanded to fulfill the congressionally established

objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to victims. *See* 18 U.S.C. §§ 3551(a), 3553(a)(2), 3553(a)(7); 28 U.S.C. §§ 991(b)(1), 994(c), 994(f), 994(g).

■ *Second,* the district court is commanded *to consider* the kinds of sentences and sentencing ranges provided by the Sentencing Guidelines, as well as the pertinent policy statements issued by the Sentencing Commission. *See* 18 U.S.C. §§ 3553(a)(4), 3553(a)(5); 28 U.S.C. §§ 994(a)(1), 994(a)(2).

■ *Third,* the court is limited by specific statutory requirements. For example, it is commanded to impose a sentence that specifically accounts for recidivism. It is prohibited from imposing a sentence that is informed or influenced by the race, sex, national original, creed, and socioeconomic status of the defendant. And it is prohibited from imposing any sentence that represents an "unwarranted sentencing disparity." *See* 18 U.S.C. § 3553(a)(6); 28 U.S.C. § 991(b)(1)(B), 994(d), 994(f), 994(h), and 994(i).

■ *Fourth,* the court must make factual findings, as appropriate or necessary to carry out its sentencing function, and in every case give the reasons for the sentence imposed, as well as reasons for particular deviations from the Sentencing Guidelines. *See* 18 U.S.C. § 3553(c).

■ In carrying out these directives during sentencing, however, district courts are bound to consider the statutory sources themselves, not our summarizations, in tailoring sentences to the circumstances. Thus, to sentence a defendant,

district courts must (1) properly calculate the sentence range recommended by the Sentencing Guidelines; (2) determine whether a sentence within that range and within statutory limits * serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guideline range better serves the relevant sentencing purposes set forth in § 3553(a). *See* 18 U.S.C. § 3551(a). As we summarized the process in *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir.2005):

> [A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence. If the court imposes a sentence outside the guideline range, it should explain its reason for doing so.

■ We add only that the district court's reasons for not applying the properly calculated Guideline range must be based on the factors listed in § 3553(a).

### B

■ Although the Supreme Court struck down 18 U.S.C. § 3742(e), which set forth standards for appellate review of a sentence, the Court inferred from "related statutory language, the structure of the statute, and sound administration of justice" that appellate courts must review a sentence "for unreasonableness." *Booker,*

125 S.Ct. at 765. The Court added that the unreasonableness review "has regard" for the sentencing "factors" articulated in § 3553(a) and the reasons for the imposition of a particular sentence, as required by § 3553(c). In other words, even though we now review for unreasonableness, a standard which is intended to accommodate a range of discretion, reasonableness is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a). Because sentencing involves applications of binding law and considerations of advisory guidelines, factual findings, and judgments made to give effect to congressional policies, the review of such sentencing is complex and nuanced.

On a discrete matter where the question is purely legal, we review the matter *de novo,* and where the question is about a finding of fact, for clear error. An error of law or fact can render a sentence unreasonable. *See generally United States v. Hummer,* 916 F.2d 186, 192 (4th Cir.1990).

■ When reviewing the district court's consideration of the Sentencing Guidelines, we are required to make a difficult judgment, determining whether the district court respected congressional and Sentencing Commission judgments and policies and, at the same time, measuring any variations from a recommended Guideline range against the factors stated in § 3553(a) and 28 U.S.C. §§ 991(a) and 994. In this area, the district court is given some latitude to tailor a particular sentence to the circumstances without discarding the overarching guidelines and

---

* The statutory limits for both maximum and minimum sentences must be honored except as statute otherwise authorizes. *See* 28 U.S.C. § 3553(e); *Melendez v. United States,* 518 U.S. 120, 125–30, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996); *United States v. Robinson,* 404 F.3d 850, 862 (4th Cir.2005).

policies. But we agree with the Seventh Circuit, which has concluded that a sentence imposed "within the properly calculated Guidelines range ... is presumptively reasonable." *United States v. Newsom*, 428 F.3d 685, 687 (7th Cir.2005).

A sentence falling outside of the properly calculated Guidelines range is not *ipso facto* unreasonable. But if that sentence is based on an error in construing or applying the Guidelines, it will be found unreasonable and vacated. *See* 18 U.S.C. § 3742(f)(1). The same is true if the sentence is imposed outside the Guideline range and the district court provides an inadequate statement of reasons or relies on improper factors in departing from the Guidelines' recommendation. *See id.* § 3742(f)(2).

Finally, in determining whether a sentence outside of the Guidelines range serves the purpose of sentencing established by Congress in §§ 3553(a), 991(a), and 994, we defer to the district court's sentencing judgments, correcting only for an abuse of discretion.

At bottom, after all proper considerations have been afforded, the overarching standard of review for unreasonableness will not depend on whether we agree with the particular sentence selected, *see Newsom*, 428 F.3d at 686–87, but whether the sentence was selected pursuant to a reasoned process in accordance with law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law.

With these principles for sentencing and our review of sentences in hand, we now turn to the sentence imposed in this case.

### III

In sentencing Green, the district court correctly observed that Green qualified as a career offender under U.S.S.G. § 4B1.1, albeit "technically," according to the district court. The court, however, chose not to sentence Green as a career offender, stating, "[i]n my view, the practical demonstration of a career offender does not fit Mr. Green." The court explained:

> The career offender section is intended to punish more harshly a persistent criminal. A career offender is a person who has demonstrated that he is ... a person who has no intention of making an honest living, makes no effort to make an honest living, but who will return to a life of crime to support himself and make money every time he is released from incarceration.... The career offender section recognizes that a disproportionate number of crimes are committed by individuals who are career offenders, and therefore, the increased sentence takes these specially dangerous people off the street.

In concluding that this understanding of a career offender "does not fit Mr. Green," the court found that career offender status over-represents Green's criminal history and the likelihood that he will commit other crimes. *See* U.S.S.G. § 4A1.3(b).

The government contends that the district court's refusal to sentence Green as a career offender amounts to an incorrect application of the Sentencing Guidelines. It maintains that the district court erred as a matter of law in considering the prior offenses as a single offense, in reducing Green's criminal history to a category III on the ground that that category "accurately reflects [Green's] prior infractions," in ignoring Fourth Circuit cases that have rejected claims of over-representation in cases whose defendants qualify as career offenders for having two felony drug convictions. *See United States v. Stockton*, 349 F.3d 755, 764–65 (4th Cir.2003) (noting that where a defendant's criminal history

reflects recidivism in controlled substance offenses, an over-representation departure is almost never appropriate); *United States v. Pearce*, 191 F.3d 488, 498 (4th Cir.1999) (holding that two prior serious drug felony convictions, as well as a parole violation, cannot sustain a claim that the record overstates the seriousness of past conduct or the likelihood of future criminal conduct); *United States v. Brown*, 23 F.3d 839, 840–42 (4th Cir.1994) (holding that a departure for over-representation is not justified by the fact that prior drug conviction involved a small quantity of drugs); *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir.1991) (noting that Congress deemed two types of recidivism, including controlled substances, to be "especially dangerous").

In concluding that Green should not be sentenced as a career offender even though he "technically" qualified for career offender status, the district court gave four reasons. *First*, the court found that Green's prior two offenses for drug trafficking were close together in time and should essentially be treated as Green's "first strike" under the three-strikes structure of the career offender provisions. As the court explained, "Even though [the two cases] were not formally consolidated, the Circuit Court for Harford County essentially treated them as part of the same offense. They were disposed of as a piece, as it were, and the singular sentence was imposed on both cases." *Second*, the court noted that Green had made "significant efforts to obtain lawful employment using the education he received" and that those efforts are "a harbinger that [Green] will, in the future, make other efforts to stay on the straight and narrow." *Third*, the court found that Green did not fit the "mold" of a career offender, who is often violent. In this case, "there is no evidence of possession of firearms by him or violence, so that that makes him atypical of

the typical drug, crack cocaine defendant." And, *fourth*, the court observed that Green, "because of his young age and his education and his family's support, is capable of making a significant contribution to society once he is released."

With respect to our review of the district court's sentence, the government directs us to that part of the district court's sentencing process in which the court considered the Sentencing Guidelines, alleging that the district court committed legal error in applying U.S.S.G. § 4A1.3(b) and in concluding that career offender status over-represents Green's criminal history. Thus, focusing only on the district court's consideration of the Sentencing Guidelines and not on whether a *properly calculated* Guideline sentence would be unreasonable when measured against § 3553(a) factors, we conclude that the district court erred as a matter of law. To explain this, we address each of the district court's reasons for concluding that career offender status should not apply for purposes of calculating a proper Guideline range.

With respect to the district court's treating Green's prior two drug convictions as one, the court was impressed by the fact that two offenses occurred at nearly the same time (two weeks apart) and that the Circuit Court for Harford County sentenced Green on the same day for both offenses. The offenses, however, involved two separate arrests. Moreover, there is no indication that they were factually related except insofar as the violations were similar in kind. With respect to the first offense on October 10, 1995, Green was found with 25 baggies of cocaine as well as an additional 1.8 ounces. After he was arrested and released for that offense, Green was *again* arrested on October 25, 1995, two weeks later, this time with 43

baggies of cocaine. The Circuit Court for Harford County never entered an order consolidating the two cases, and while the court sentenced Green on the same date in the two cases, the court imposed separate sentences.

■ Section 4A1.2(a)(2) provides that for determining career offender status, "prior sentences imposed in unrelated cases are to be counted separately." Application Note 3 explains that cases are not "related" if they were for offenses that were separated by an intervening arrest— *i.e.,* "the defendant [was] arrested for the first offense prior to committing the second offense." U.S.S.G. § 4A1.2, comment. (n.3); *cf. United States v. Letterlough,* 63 F.3d 332 (4th Cir.1995) (holding that sales made to the defendant by the same police officer approximately 90 minutes apart did not arise from a continuous course of criminal conduct and constituted two separate and distinct offenses); *United States v. Allen,* 50 F.3d 294, 295 (4th Cir.1995) (holding that in the absence of a formal order of consolidation, factually unrelated offenses for which the defendant receives separate, sequential sentences, made to run concurrently, *in one sentence proceeding,* are not "related" for purposes of calculating the defendant's criminal history score). We thus conclude that the district court erred as a matter of law in considering Green's two prior offenses as one for purposes of applying U.S.S.G. § 4B1.1.

■ With respect to the court's reliance on Green's efforts to obtain lawful employment to conclude that Green should not be sentenced as a career offender, the court again incorrectly applied the Guidelines. First, efforts to seek employment are not relevant for determining whether a defendant is to be sentenced as a career offender. While that circumstance might support generally a departure from the Sentencing Guidelines, it may be relied

upon then only if the factor is present to an exceptional degree. *See* U.S.S.G. Ch. 5 Pt. H, intro. comment; *see also* U.S.S.G. § 5H1.5 (providing that employment record is not ordinarily relevant in determining whether to depart). Moreover, the facts in this case are not exceptional. Green was released from jail in 2000, and within two years, according to his own concession, he was dealing in quarter-kilogram quantities of cocaine. A year later, he was arrested for the present offense. Thus, there was a three-year period between prison sentences during which Green made efforts to find employment. The record indicates, however, that he actually obtained four separate jobs but could not hold them. This is not a case where he was frustrated in *obtaining* a job; rather, he was unable *to hold* a job, surely contributed to by his illegal side business.

■ With respect to the court's conclusion that Green was not a typical crack cocaine dealer because he did not possess firearms or use violence, the court simply expressed disagreement with Congress' decision to base career offender status on two prior drug offenses, without any need to involve firearms or violence. Congress clearly stated that defendants who have "previously been convicted of two or more prior felonies involving controlled substances be sentenced at or near the maximum term authorized." *See* 28 U.S.C. § 994(h). In doing so, it made the policy determination that recidivism for drug dealing, without more, is especially dangerous. *See United States v. Adkins,* 937 F.2d 947, 952 (4th Cir.1991). The district court was not free to ignore that policy judgment and substitute one that would require, in addition, firearms and violence.

■ Finally, the district court noted that Green was young and educated and

had family support, concluding that therefore Green was capable of yet making significant contributions to society. As noted above, the court did not, however, conclude that these factors existed to any exceptional degree. At the time of sentencing, Green was 30 years old, and for most of the previous ten years had either been in prison or was involved in drug dealing. With presumably the same family support, Green chose to begin dealing in drugs at least as early as 1995, almost immediately after he dropped out of college. While it is impossible to conclude that Green, or anyone else, would not be "capable" of making a significant contribution to society in the future, nothing in this record supports a conclusion that Green's chances of contributing to society are exceptionally greater than others who will have served a substantial prison sentence, as Green will have.

 Underlying the district court's opinion of Green was an overall perception that Green's two convictions in 1995 were small-time street convictions that amounted to an aberration in an otherwise crime-free history. But the record does not support this perception. The record shows that since dropping out of college at the end of 1994, Green has been involved in drug dealing almost all of the time he was not in prison. In the spring of 1995, he was arrested for drug trafficking, a case that was placed on the stet docket (indeterminately stayed) in State court on May 16, 1995. He was arrested again on October 10, 1995, for dealing in substantial amounts of cocaine, and after his release was arrested only two weeks later, on October 25, 1995, for dealing again in substantial amounts of cocaine. Following the second arrest, Green remained in prison for almost five years, until his release in 2000 on parole. At that time, Green also began a five-year period of probation for his October 10 offense. Yet, within two years of his release and while still on parole and on probation, Green began distributing *quarter-kilogram* quantities of cocaine, and those amounts increased thereafter until his federal arrest in 2003. At the time of his arrest in 2003, Green was found with nine ounces of crack cocaine, an amount sufficient to subject him to a mandatory life sentence if the U.S. Attorney elected to charge Green as an offender with two prior drug convictions under 21 U.S.C. § 841(b). Indeed, both offenses in 1995 were also serious ones, for which Green would have received many years of incarceration under the federal guidelines. In short, for only a two-year period during the last ten years is there no direct evidence that Green was dealing in cocaine and crack cocaine in substantial amounts or serving a sentence for dealing in drugs. To the extent that the district court perceived Green's two 1995 convictions as aberrational, it clearly erred.

Because Green's sentence was imposed as the result of an incorrect application of § 4B1.1 of the Sentencing Guidelines, we vacate the sentence as unreasonable and remand the case for further sentencing, consistent with this opinion. *See* 18 U.S.C. § 3742(f)(1).

*VACATED AND REMANDED.*