PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellant,*

v.

QUIANA GANAY HAMPTON,
　　　　　　*Defendant-Appellee.*

No. 05-4224

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CR-04-575)

Argued: February 2, 2006

Decided: March 23, 2006

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Duncan joined. Judge Motz also wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** Christopher Todd Hagins, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellant. Ronald R. Hall, West Columbia, South Carolina, for Appellee. **ON BRIEF:** Jonathan S. Gasser, Acting United States Attorney, Columbia, South Carolina, for Appellant.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this appeal, the United States challenges Quiana Ganay Hampton's sentence for being a felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g)(1) (West 2000). The sole issue presented to us is whether the sentence — three years' probation — is reasonable under the standard set forth in *United States v. Booker*, 125 S.Ct. 738, 765 (2005). For the reasons that follow, we conclude that it is not. Therefore we vacate the sentence and remand the case for resentencing.

I.

The facts relevant to the underlying offense are undisputed. On January 10, 2004, the police in Lexington, South Carolina, received two telephone calls reporting gunfire in a residential neighborhood. Upon arriving at the reported address, police officers found Hampton, along with three other individuals, at his home. Hampton appeared intoxicated. He said he had seen someone shining flashlights into his home and had fired his gun to protect his property. The officers obtained permission to search the premises, and, upon doing so, they found three shell casings outside the home and a rifle in Hampton's bedroom. Hampton later admitted that he owned the rifle, and provided officials with the name of the person who had sold it to him. A criminal background check revealed that Hampton had a prior conviction for a crime with a term of imprisonment exceeding twelve months, *i.e.*, a felony. Indeed, further investigation revealed that Hampton had a total of two prior felony convictions, neither of which had been pardoned, and that several additional charges were pending against him.

Hampton ultimately pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g). At the sentencing hearing, both the government and Hampton accepted the presentence investigation report (PSR), which calculated Hampton's base offense level as 23 and his criminal history category as III. This corresponds to a guidelines sentence of 57 to 71 months' imprisonment.

Hampton's counsel, however, urged the court not to incarcerate Hampton but instead to impose "some kind of supervised release." Defense counsel explained that Hampton did not know that he could not own a rifle (he believed the law only precluded felons from owning handguns), that he cooperated with the police, that he did not use the gun in any crime, that he did not steal the gun but rather bought it lawfully, that he had no criminal or malicious intent in possessing or discharging the firearm, that he had straightened out his life by joining a church and obtaining full-time employment, and that he was "a single parent of two minor children, wh[o] he is raising and supporting with the help and assistance of his mother." For these reasons, Hampton's counsel argued that "there would be no purpose served, either for . . . the government or Mr. Hampton to incarcerate him for any period of time."

The government opposed the defense's request, arguing that in its view a "reasonable sentence" would be one within the advisory guideline range. The prosecutor explained that this "position [wa]s based on numerous factors," including Hampton's intoxication at the time of the incident, and the fact that he fired several gun shots at night "in a residential neighborhood," thus risking harm to others. The government contended that, given the seriousness of the offense and the necessity for deterrence, a sentence within the guideline range would be reasonable.

After listening to arguments of counsel and questioning Hampton about the details of the offense and his personal characteristics, the district court imposed its sentence. At the outset, the court properly recognized that in *Booker*, the Supreme Court directed a sentencing judge to consider the guideline range, as well as the other factors enumerated in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2005). The court then determined that because Hampton "work[ed] regularly and . . . provide[d] for his children," because the offense involved no injury, and because a term of imprisonment would likely force Hampton's children, for whom Hampton was the "sole provider," into foster care, "imprisonment in accordance with the sentencing table in response to the guidelines would not be proper in this case." The court concluded instead that a sentence of three years' probation — with no imprisonment — would "adequately deter others from violating the law in this respect" and would "protect the public from further crimes

by this defendant." The government objected to the sentence as being unreasonable, and noted a timely appeal.

## II.

In *Booker*, 125 S.Ct. at 757, the Supreme Court invalidated mandatory application of the United States Sentencing Guidelines, thereby making the guidelines "effectively advisory." *Booker* instructs sentencing courts to make individual sentencing decisions grounded in all of the factors set forth in 18 U.S.C.A. § 3553(a). *Id.* One of these factors is "the kinds of sentence and the sentencing range established" by the now-advisory guidelines. 18 U.S.C.A. § 3553(a)(4). Sentencing courts must therefore still "take account of" the now-advisory guidelines in post-*Booker* sentencing. 125 S.Ct. at 764. Indeed, we have directed that when sentencing a defendant, a district court, after making appropriate findings of fact, must initially calculate the proper guideline range. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). A court must consider this range, along with the other factors set forth in § 3553(a), in determining an appropriate sentence in each case. *Booker*, 125 S.Ct. at 757; *Hughes*, 401 F.3d at 546-47.

Thus, after determining the advisory guideline range, a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a). *See also United States v. Green*, 436 F.3d 449, 455-56 (4th Cir. 2006). Only sentences that "reflect" these § 3553(a) factors — whether falling within or outside the guideline range — comply with Congress's statutory mandate. *See Booker*, 125 S.Ct. at 765.

In determining if a sentence "serves the factors set forth in § 3553(a)," a court should determine, after calculating the initial guideline range, whether a traditional upward or downward departure under the guidelines would be appropriate; if so, the court may depart accordingly. *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006).[1] If after this consideration the sentence rendered does not serve

---

[1]A district court may grant a "traditional" downward or upward departure if it finds an aggravating or mitigating factor of a kind or a degree

the § 3553(a) factors, a court may impose a "variance sentence," *i.e.*, a sentence not within the advisory guideline range. The court may impose this variance sentence provided that the sentence falls within the statutory limits for the underlying offense and is "reasonable." *Id.*; *Green*, 436 F.3d at 456. But the sentencing court must adequately explain the reasons for the variance. *Hughes*, 401 F.3d at 546.

The reasonableness of any given sentence will largely depend upon the specific facts of each case and the district court's consideration and application of the § 3553(a) factors to those facts. *Moreland*, 437 F.3d at 433. In considering whether a sentence is unreasonable, we will review the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.*

We recently explained that "[a] sentence that falls within the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness." *Id.* This is not to say that a sentence falling outside of the guideline range is automatically unreasonable; rather, the reasonableness of a variance sentence will depend upon whether a variance was proper in light of the facts of the particular case at hand, as well as whether those facts support the degree of the variance granted. *Id.* at 433-34.

If the district court's justifications for the variance sentence "are tied to § 3553(a) and are plausible," we will uphold the sentence as reasonable. *Id.* at 434. "However, when the variance is a substantial one, . . . we must more carefully scrutinize the reasoning offered by the district court in support of the sentence. The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Id. See also United States v.*

---

that the Sentencing Commission did not consider applicable to the "heartland" of cases. *Koon v. United States*, 518 U.S. 81, 92-94 (1996). Such departures will generally be based on encouraged factors — those the Commission recognized the guidelines did not fully take into account — but departures may also be based on discouraged factors — those the Commission considered and deemed irrelevant to the determination of most sentences. *Id.* at 94-95. Departures based on discouraged factors, however, are appropriate only in "exceptional" cases. *Id.* at 95.

*Dean*, 414 F.3d 725, 729 (7th Cir. 2005); *United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005).

With these principles in mind, we turn to the question of whether the sentence that Hampton received — three years' probation for being a felon in possession of a firearm — was reasonable.

### III.

In calculating Hampton's sentence shortly after the Supreme Court decided *Booker*, the district court properly recognized that the now advisory sentencing guidelines still play an important role in sentencing. Thus, relying on the unchallenged PSR, which calculated a base offense level of 23 and placed Hampton in a criminal history category of III, the court initially determined the advisory guideline range to be 57 to 71 months' imprisonment. The court then mentioned some of the other § 3553(a) factors in determining that a variance sentence would best serve the purposes set forth in that statute.[2]

The court reasoned that because the offense caused no injury and because Hampton was employed and was caring for his two youngest children, a sentence of no incarceration, but only probation, would adequately deter Hampton and others from violating the law and

---

[2]We note that the sentencing hearing in this case took place on February 11, 2005, just one month after the Supreme Court issued its opinion in *Booker* and at a time when post-*Booker* sentencing law remained largely undeveloped. In imposing the non-guideline sentence at issue here, the district court utilized the language of "departure" rather than what has more recently become known as a "variance." The permissible factors justifying traditional departures differ from — and are more limited than — the factors a court may look to in order to justify a post-*Booker* variance. *See, e.g.*, *United States v. Brady*, 417 F.3d 326, 333 (2d Cir. 2005) (explaining that a lower sentence may be appropriate "even when a downward departure is unavailable"). Our review of the record indicates that, after calculating the proper advisory guideline range, the district court did not make a traditional downward departure — Hampton did not contend that any grounds existed for such a departure. Rather, although the district court said it was "departing" fifteen levels, we believe it actually imposed a *variance* sentence, relying on some of the § 3553(a) factors. We therefore review the sentence accordingly.

would adequately protect the public from Hampton. A review of the sentencing hearing indicates that the district court's primary concern was the fate of Hampton's two small children should he be sent to prison. As a result, the court reduced Hampton's sentence well below the guideline range (57 to 71 months' imprisonment) and avoided imposing any term of incarceration.

In order to withstand reasonableness scrutiny, such a dramatic variance from the advisory guideline range must be supported by compelling justifications related to § 3553(a) factors, *see Moreland*, 437 F.3d at 433-34, and "excessive weight" may not be given to any single factor. *See Green*, 436 F.3d at 457. The sentence at issue here fails in both of these respects. First, although the district court briefly mentioned two § 3553(a) factors — deterrence and protection of the public — in setting forth the variance sentence, the court never explained *how* the sentence imposed — probation — served these interests. Furthermore, the court did not explain how this variance sentence better served the competing interests of § 3553(a) than the guidelines sentence would. Nor has Hampton offered any argument in support of such conclusions.

In truth, the district court actually relied on (rather than merely mentioned) only one aspect of one § 3553(a) factor — Hampton's status as sole custodial parent of his two small children; but even though Hampton apparently supported and cared for two of his children (with the assistance of his mother), he was behind in child support for his two other children. Family ties and responsibilities are a discouraged factor under the guidelines. U.S.S.G. § 5H1.6. Under the facts of this case, Hampton would not have been entitled to a downward departure pursuant to a computation of an appropriate sentence under the guidelines, and we do not find in this record, considering all the circumstances, any other basis for a reduction of near this magnitude. Without deciding if a variance could be based on the existence of a factor discouraged as a basis for departure under the guidelines, we believe Hampton's sentence must be vacated and the case remanded for resentencing consistent with this opinion.

IV.

For the foregoing reasons, the judgment of the district court is

*VACATED AND REMANDED*.

DIANA GRIBBON MOTZ, Circuit Judge, concurring:

I write separately to emphasize that a variance of this magnitude is not *per se* unreasonable, and that consideration of a defendant's personal characteristics and history is proper under § 3553(a). When evaluating the reasonableness of a variance sentence, we must determine in each case whether the particular reasons offered by the district court warrant the specific reduction imposed. Here, the district court gave excessive weight to a single § 3553(a)(1) factor and failed to consider other relevant personal characteristics, such as Hampton's prior convictions and pending charges, his being behind in child support payments, and his inconsistent employment history, as well as other relevant § 3553(a) factors. Given the sparsity of applicable § 3553(a) factors supporting a deviation from the guideline range in this case, the court's purported reasons for reducing Hampton's sentence fall far short of justifying a variance of such a degree.

However, there will undoubtedly be cases in which a sizable variance sentence better serves the § 3553(a) factors. *See, e.g.*, *United States v. Williams*, 435 F.3d 1350, 1354-55 (11th Cir. 2006) (per curiam) (affirming a sentence that was more than fifty percent below the suggested guideline range); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (affirming the district court's six-level variance as "reasonable based on the § 3553(a) factors"). Moreover, automatic application of the guidelines without proper consideration of the other § 3553(a) factors would contravene *Booker*'s mandate. *See* 125 S.Ct. at 757. Thus, in fashioning a reasonable sentence, district courts must properly calculate the advisory guideline range and then must determine what sentence — one within the advisory range or outside of it — most effectively meets the factors set forth § 3553(a).