**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4335**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHONTI YAVESSE LILLY,

Defendant - Appellant.

———————

**No. 06-4361**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

CHONTI YAVESSE LILLY,

Defendant - Appellee.

———————

Appeals from the United States District Court for the District of
South Carolina, at Florence.  R. Bryan Harwell, District Judge.
(4:05-cr-01041-RBH-2)

———————

Argued:  December 1, 2006                 Decided:  May 17, 2007

———————

Before MOTZ and TRAXLER, Circuit Judges, and David A. FABER, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Ray Coit Yarborough, Jr., Florence, South Carolina, for Appellant/Cross-Appellee. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Criminal Division, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Reginald I. Lloyd, United States Attorney, Rose Mary Parham, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee/Cross-Appellant.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On November 10, 2005, Chonti Yavesse Lilly pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). The district court, pursuant to U.S. Sentencing Guidelines Manual § 2K2.1(c), applied the cross-reference to the homicide guidelines found at section 2A1.1. The court granted Lilly a variance sentence, however, and ordered that his federal sentence run concurrently to a state sentence imposed for a cocaine trafficking conviction. The defendant appeals the murder cross-reference, and the government appeals the variance sentence and the imposition of a concurrent sentence. We affirm the district court's sentence.

I.

On November 9, 2004, Lilly, his brother, Kwame, and his uncle, Junior, got into an argument with Kelvin Platt and others at a residence in Wallace, South Carolina. The police responded to the scene, and Kwame and Junior fled to some nearby woods. Lilly remained, and threatened Platt by saying, "You wait until the police leave and see what happen [sic] to you." (Joint Appendix (JA) 110.) Lilly added that he was "going to burn [Platt]" when the police left. (Id. at 110-11.) The police advised the two groups to stay away from each other, and then left the area.

3

After the police left, Kwame and Junior came out of the woods. Kwame brandished a gun, and told Lilly to get Platt. Lilly drew a .380 caliber pistol and pointed it at Platt's head. Platt retreated to safety, but he soon returned to challenge Lilly to a "fair fight" without weapons. (Id.) Lilly agreed, and he laid his gun on top of his coat. Lilly and Platt started fighting, but when Platt began winning the fight, Junior told Kwame to "go handle the situation." (Id.) Kwame picked up Lilly's gun and shot Platt in the head, killing him.

Lilly pled guilty on November 10, 2005, to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). While Lilly awaited sentencing for his federal crime, a South Carolina state court sentenced Lilly to five years imprisonment for a May 2005 cocaine trafficking conviction.

At Lilly's federal sentencing hearing on March 15, 2006, the district court applied the cross-reference to first-degree murder to determine Lilly's guideline range. This resulted in a guideline range of 360 months to life. However, because the underlying offense carried a statutory maximum of ten years, Lilly's guideline range became 120 months.

The district court granted Lilly's motion for a variance sentence, reasoning that Lilly's brother actually killed Platt, Platt was much bigger than Lilly, and Platt contributed to his own

4

death by voluntarily returning to fight Lilly. The court then sentenced Lilly to 102 months and ordered that his federal sentence run concurrently to his state drug sentence.

## II.

We first address whether the district court erred in applying U.S. Sentencing Guidelines Manual § 2K2.1(c)(1)(B) and cross-referencing the first-degree murder guideline, U.S. Sentencing Guidelines Manual § 2A1.1, to enhance Lilly's sentence. "In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006).

### A.

Lilly first argues that the district court erred by cross-referencing the homicide guidelines. He contends that his brother Kwame and his uncle Junior jointly undertook to kill Platt after he abandoned his gun, and that he did not participate in their criminal activity. The sentencing court found that Lilly induced his brother to murder Platt by pointing the gun at Platt's head, threatening Platt's life, and then placing the gun where it was readily available to his brother. We agree with the district court.

5

When a defendant possesses a firearm in connection with another crime, or if a defendant transfers a firearm with the knowledge or intent that the gun will be used in another crime, and that crime results in death, sentencing courts must cross-reference the homicide guidelines to determine the defendant's base offense level. U.S. Sentencing Guidelines Manual § 2K2.1(c)(1)(B).

A district court determines the appropriate cross-reference based on the following:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and, (B) in the case of a jointly undertaken criminal activity[,]. . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

Id. at § 1B1.3(a)(1)(A)-(B). A defendant may be held liable for another person's conduct under both subsections (a)(1)(A) and (a)(1)(B). Id. at § 1B1.3 cmt. n.2, illus. b(1).

The evidence clearly supports a finding that Lilly induced his brother Kwame to murder Platt. See id. at § 1B1.3(a)(1)(A). Lilly induced Platt's murder by previously threatening Platt's life, pointing his gun at Platt's head, and then making the gun readily available to his brother before fighting Platt.

The evidence also shows that Lilly reasonably could have foreseen that his brother might murder Platt in furtherance of their joint criminal activity. See id. at § 1B1.3(a)(1)(B). Lilly, Kwame, and Junior were engaged in joint criminal activity - threatening Platt's life. As stated above, Lilly and Kwame

6

threatened Platt's life, and Lilly pointed his gun at Platt's head. Lilly then agreed to fight Platt, who was much bigger than Lilly. Before fighting Platt, Lilly placed his gun where it was readily available to Kwame. Given their differences in stature, Lilly likely could have concluded that Platt might have an advantage over him in a fight. By placing his gun where it was readily available to his brother, Lilly either knew, or should have known, that his brother would intervene if Platt started to win the fight. Therefore, Lilly could have reasonably foreseen that his brother might use his gun to kill Platt in furtherance of their joint criminal activity. Thus, the district court properly cross-referenced the homicide guidelines.

B.

Lilly next argues that there is no evidence from which the sentencing court could have concluded that he acted with premeditation and malice. Lilly suggests that, at most, the evidence supports only a finding of voluntary manslaughter.

To sentence a defendant based on the first degree murder guideline, a court needs to find by a preponderance of the evidence that the defendant acted with malice and premeditation. See 18 U.S.C. § 1111(a). Second degree murder requires a finding of only malice. Id. Voluntary manslaughter is the unlawful killing of

7

another without malice and "upon a sudden quarrel or heat of passion." Id. at § 1112.

The evidence clearly supports a finding of malice. Malice may be established by reckless and wanton conduct, or conduct that is a gross deviation from a reasonable standard of care. United States v. Fleming, 739 F.2d 945, 947-48 (4th Cir. 1984). Such conduct shows "that [the] defendant was aware of a serious risk of death or serious bodily harm." Id. A court can infer malice when a person uses a weapon "in a manner as may be expected naturally and probably to cause death." United States v. Celestine, 510 F.2d 457, 459 (9th Cir. 1975). Lilly pointed a gun at Platt's head, Lilly and Kwame threatened Platt's life, and Kwame shot Platt in the head with a gun. These actions show reckless and wanton conduct, and thus the district court properly found that Lilly acted with malice.

The facts also support a finding of premeditation. Lilly and Kwame threatened Platt's life on the night in question. Lilly pointed his gun at Platt's head, but then agreed to fight him "fairly." However, Lilly placed his gun where it was readily available to Kwame, who stood just feet away. When Platt began winning the fight, Kwame picked up Lilly's gun, walked over, and shot Platt in the head. Given these facts, it was reasonable for the district court to conclude that Lilly and Kwame always intended

8

to murder Platt.  Thus, the court properly found that premeditation existed.

Because Lilly acted with premeditation and malice, we find that the district court did not err in cross-referencing the first degree murder guideline, and we affirm this part of the court's sentence.

III.

The second issue is whether the district court erred in imposing a variance sentence based upon the nature and circumstances of the offense, and in ordering it to run concurrently to a state sentence.

After United States v. Booker, 543 U.S. 220 (2005), sentencing courts must use a multi-step process in determining a defendant's sentence.  First, "after making appropriate findings of fact, [sentencing courts] must initially calculate the appropriate guideline range."  United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006).  Then, the court must determine whether a sentence in that range "serves the factors set forth in § 3553(a)."  Id.  If the sentence does not serve the factors set forth in § 3553(a), the court should determine "whether a traditional upward or downward departure under the guidelines would be appropriate."  Id.; see also United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006).  Finally, if a downward or upward departure is not available, "a

court may impose a variance sentence . . . provided that the sentence falls within the statutory limits for the underlying offense and is reasonable. But the sentencing court must adequately explain the reasons for the variance." Hampton, 441 F.3d at 287 (internal citations and quotations omitted); Moreland, 437 F.3d at 287. The reasons for the variance must be tied to the factors set forth in 18 U.S.C. § 3553(a). Hampton, 441 F.3d at 287. Because concurrent sentences reduce the amount of time a defendant serves overall for an underlying federal conviction, they are analyzed as variance sentences. See United States v. Curry, 461 F.3d 452, 460-61 (4th Cir. 2006).

We review a post-Booker sentence for reasonableness. Moreland, 437 F.3d at 433. Sentences outside of the advisory guideline range will be found unreasonable and vacated if the sentencing court fails to give adequate reasons for imposing the variance or relies upon improper factors. United States v. Perez-Pena, 453 F.3d 236, 241 (4th Cir. 2006). "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable." Moreland, 437 F.3d at 434.

The district court granted Lilly a variance sentence from 120 months to 102 months and ordered the federal sentence to run concurrently to Lilly's state drug sentence. At the time of his federal sentencing, Lilly was predicted to be released from state

custody on November 8, 2007.  Thus, the imposition of a concurrent sentence effectively reduced Lilly's federal sentence by another twenty months.

The court granted the variance because of the nature and circumstances of the offense.  18 U.S.C. § 3553(a)(1). The court reasoned that a variance was warranted because (1) the victim contributed to his own death by returning to fight Lilly after Lilly had already pointed a gun at him; (2) the victim was much larger than Lilly; and (3) Lilly's brother actually fired the shot that killed the victim.

The government contends that the district court did not provide enough detail before granting the variance and ordering the sentence to run concurrently to Lilly's state sentence.  However, the district court's statements at the sentencing hearing make it clear that the court sufficiently considered the § 3553(a) factors. See United States v. Eura, 440 F.3d 625, 632 (4th Cir. 2006)("To establish the reasonableness of a sentence, a district court need not explicitly discuss every § 3553(a) factor on the record. Rather, the record must reflect that the court adequately and properly considered the § 3553(a) sentencing factors." (citations omitted)).  In addition, the court adopted, on the record, the findings of the Presentence Investigation, which detailed Lilly's criminal history and relevant conduct.  Thus, the district court implicitly considered all of the § 3553(a) sentencing factors

before imposing a variance sentence.  See Hampton, 441 F.3d at 289 (Motz, J., concurring)(stating that courts must not give excessive weight to the nature and circumstances of the offense at the expense of the other factors in § 3553(a), such as a defendant's prior convictions and pending charges).

We therefore conclude that the district court's reasoning was sufficient for imposing the variance sentence, and in ordering the variance sentence to run concurrently to the state sentence.

IV.

For the foregoing reasons, we affirm the district court's sentence.

AFFIRMED