PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SEAN THOMAS SULLIVAN, a/k/a Rico,
*Defendant-Appellant.*

No. 03-4601

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

KENNETH ADRIAN CAMPBELL, a/k/a
Kenny, a/k/a Kac,
*Defendant-Appellant.*

No. 03-4610

Appeals from the United States District Court
for the District of South Carolina, at Beaufort.
Sol Blatt, Jr., Senior District Judge.
(CR-00-263)

Argued: October 25, 2005

Decided: July 11, 2006

Before WIDENER, KING, and DUNCAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published per curiam opinion in which all judges of the panel concurred. Judge Widener wrote a concurring and dissenting opinion. Judge King wrote a concurring opinion, in which Judge Duncan joined.

## COUNSEL

**ARGUED:** Rosemary Curran Scapicchio, Boston, Massachusetts; Kathrine Haggard Hudgins, Columbia, South Carolina, for Appellants. Robert Hayden Bickerton, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** Edwin W. Rowland, Hilton Head Island, South Carolina, for Appellant Sean Thomas Sullivan. J. Strom Thurmond, Jr., United States Attorney, Nancy C. Wicker, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

---

## OPINION

PER CURIAM:

Pursuant to the following opinions of Judge Widener and Judge King, the convictions of the defendants are hereby affirmed, and their sentences are hereby vacated. Judge Widener's opinion in these appeals, to the extent that it affirms the convictions of the defendants, is joined by Judge King and Judge Duncan. Judge King's separate opinion, which agrees with the result reached by Judge Widener as to Sullivan's sentence, but for different reasons, addresses the sentencing issues only, vacates both defendants' sentences, and remands for resentencing. It is joined by Judge Duncan. Judge Widener agrees in the result reached by Judge King as to Sullivan's sentence, but for the reasons expressed in his opinion. He dissents from Judge King's opinion and the result there reached as to the sentencing of Campbell.

The convictions of Sean Thomas Sullivan and Kenneth Campbell are thus affirmed, their separate sentences are vacated, and these cases are remanded to the district court for such other and further sentencing proceedings as may be appropriate.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*

WIDENER, Circuit Judge, concurring and dissenting:

This case presents the consolidated appeals of defendants Sean Thomas Sullivan and Kenneth Adrian Campbell. Sullivan and Campbell were convicted on a number of charges related to their involvement in a criminal drug conspiracy to distribute cocaine base, commonly known as crack, which took place in and near Beaufort County, South Carolina.

Both Sullivan and Campbell appeal their convictions. While their appeals were pending, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which held that the United States Sentencing Guidelines were advisory rather than mandatory, and that facts used to enhance a defendant's sentence must be found by a jury or admitted by the defendant by way of guilty plea or otherwise. Sullivan and Campbell added a *Booker* claim to their appeals and filed supplemental briefs. We affirm the convictions. We vacate Sullivan's sentence and remand for resentencing, I for reconsideration in light of *United States v. Booker* and *United States v. White*, 405 F.3d 208 (4th Cir. 2005), Judge King and Judge Duncan for reasons expressed in Judge King's separate opinion. I would affirm Campbell's sentence, Judge King and Judge Duncan would vacate and remand that also for the reasons expressed in Judge King's separate opinion.

I.

This case revolves around a drug conspiracy in and near Beaufort County, South Carolina that existed from 1996 through July 2001. During this period, the defendants and others cooperated with Campbell to take over the distribution of crack cocaine in that neighborhood.

The conspiracy unraveled when law enforcement agents were able to make a number of undercover purchases of crack cocaine from several of the conspirators, including Sullivan. Sullivan was arrested at or near the last of these transactions, and arresting officers then discovered a 9mm Glock pistol on his person. This pistol had had some of its serial numbers, including the primary one on the frame of the pistol, removed.

The 49-count Third Superseding Indictment, which was the one brought to trial, was filed on July 12, 2001. This indictment named 11 people, including the two defendants in the present appeal, as members of the crack distribution conspiracy.

Of the various charges in the indictment, Campbell was convicted of Count 1 with conspiracy to possess with intent to, and to distribute, 50 grams or more of crack, and in Count 49 with conspiring to possess firearms in furtherance of the drug trafficking crime set forth in Count 1 of the indictment.

Sullivan was likewise convicted of counts 1 and 49. Additionally, Sullivan was convicted of Counts 29, 30 and 31 with the distribution of less than five grams of cocaine base, of Count 32 with the possession, with intent to distribute, more than five grams of crack, of Count 34 with using and carrying a firearm in relation to a drug trafficking crime; and of Count 35 with possession of a firearm with an obliterated serial number. Sullivan was eventually convicted of Counts 1, 29, 30, 31, 32, 34, 35, and 49.

The trial of the defendants, along with seven of their co-defendants, began on August 13, 2001, and testimony concluded on August 29, 2001. The jury found both Campbell and Sullivan guilty on September 15, 2001.

At trial, many of the witnesses were members of the conspiracy who had agreed to plead guilty and were cooperating with the government in exchange for reduced sentences. These witnesses provided testimony regarding the supplier-dealer organization and other details of operation of the conspiracy, the identities of other conspirators, including Campbell, and similar information. When eliciting this testimony, the government introduced into evidence the agreements it had made with these witnesses.

On March 4 and March 5, 2003, the district court held a sentencing hearing and found that Sullivan and Campbell had participated in the February 1999 murders of Toby Bing and Elshawndra Jones.

The district court imposed life sentences on both defendants on July 15, 2003. The court determined that Campbell's drug crime

involved 1,858 grams of crack cocaine. Additionally, the court imposed a sentencing enhancement for the murders of Bing and Jones. Finally, the district court applied a four level enhancement, finding that Campbell was a leader of the drug distribution ring.

Similarly, in sentencing Sullivan, the district court relied at least partially upon the testimony at sentencing to apply the murder cross-reference. Additionally, the district court determined that Sullivan was responsible for the distribution of 720 grams of crack. These enhancing facts were not determined by the jury at trial.

Sullivan argues that the government failed to produce sufficient evidence to sustain the drug conspiracy and other charges against him. Additionally, while the appeal was pending, the Supreme Court decided *United States v. Booker*. Due to the effect of that case on this appeal, the parties filed supplemental briefing on the effect of *Booker* on their sentences.

## II.

## A.

The federal Sentencing Guidelines were adopted in order to bring more uniformity and predictability to criminal sentences. The Guidelines assigned a numerical value, called the base offense level, to each criminal offense, and, as well, assigned the defendant to one of six criminal history categories. Additionally, the base offense level could be adjusted upward or downward based upon findings made by the court at sentencing.

As stated, the Supreme Court decided *United States v. Booker*, which held that mandatory application of the Sentencing Guidelines was unconstitutional, as that application violated the defendants' Sixth Amendment right to have the facts upon which a sentencing was based to be found beyond a reasonable doubt by a jury when it exceeded the sentence which might have been awarded upon only the jury verdict. We have determined that in the ordinary case the proper application of *Booker* is to affirm sentences that are within the statutorily prescribed range and are reasonable, *United States v. Hughes*,

401 F.3d, 540, 546-47 (4th Cir. 2005); and to vacate and remand mandatory guideline sentences when the guideline range involves extra-verdict enhancement. *White*, 405 F.3d at 222.

### B.

There follows an analysis of Campbell's and Sullivan's eligibility for sentencing in view of the jury verdict and without other fact-finding by the court except previous convictions.

Campbell was convicted under Count 1, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and § 846 of a conspiracy to distribute more than 50 grams of cocaine base. Because the jury did not determine the quantity beyond that contained in the indictment, under *Booker* we use only 50 grams in basic calculation of his sentence. This would result in a base offense level of 32 under USSG § 2D1.1(c)(4).[1] Campbell's firearms conspiracy conviction in count 49, 18 U.S.C. § 924(o), carries a base offense level of 24 under USSG § 2K2.1(a)(2) because, according to the presentence report, he has at least two qualifying prior convictions.

Additionally, Campbell had a number of prior criminal convictions, including criminal sexual conduct with a minor and accessory after the fact to robbery, which are felonies and crimes of violence under the definition in USSG § 4B1.2. These convictions are sufficient to qualify him as a career offender under USSG § 4B1.1.[2] As a career

(Text continued on page 8)

---

[1]These references are to the 2001 edition of the Guidelines Manual, which was used in the district court's sentencing of the defendants.

[2]"Campbell did not object to this classification in his objections to the pre-sentence report. He does not object to the classification in his brief in this court.

At the sentencing hearing, the district court heard Campbell's numerous objections to his pre-sentence report raised by his attorney. Page references are to the sentencing transcript (ST) unless otherwise indicated.

The first was to the information in paragraphs six and seven, which tied Campbell to Sabra Robinson, another figure in the drug conspiracy. Lionel Lofton, Campbell's attorney, acknowledged that he was stuck with this by the jury verdict. (ST 448)

The second and third were to the calculation of the drug quantities involved in Campbell's conspiracy while Dorrine Green, a co-defendant, was incarcerated. The probation officer made the requested changes based on those objections. (ST 448)

Fourth, Campbell objected to the inclusion of paragraphs 20-47, which concerned the murders of Bing and Jones. (ST 448) The district court took this objection under advisement before ultimately applying the murder cross-reference. Additionally, Campbell would object to later inclusion of the cross-reference in paragraphs 53, 54 and 58 of his sentencing calculations. (ST 451)

Fifth, Campbell objected to paragraph 48 of the pre-sentence report, which contained the statement of Curtis Fields, a codefendant who was cooperating with the government. (ST 448-49) This statement indicated that Campbell had threatened Fields about "being a snitch," and related to Count 46 of the indictment, in which Campbell was charged with tampering with a witness by threatening Fields. (Campbell JA 56) Count 46 had been dismissed previously. The court declined to strike the paragraph, but stated that it would not rely upon it in sentencing. (ST 449)

Sixth, Campbell challenged paragraph 51 of the report, which stated his base offense level for drug quantities. Campbell complained that the probation officer impermissibly calculated his drug liability using facts not found by the jury.

Seventh were the objections to the inclusion of various prior criminal charges in the pre-sentence report. Campbell objected to the inclusion of paragraph 72 on the grounds that the charge was not substantiated, and withdrew his objection when the probation officer indicated that she had substantiated it. (ST 445) Similarly, he objected to paragraphs 75, 77, 78, 80, 81, 82, and 83 on the grounds that the criminal charges discussed in those paragraphs were either dismissed or nolle prossed. (ST 451-53)

Finally, Campbell raised an objection to the determination in paragraph 94 that his final offense level was 43, as it was based upon findings such as the drug quantities and murder cross-reference that he had previously objected to. (ST 453) The district court overruled this objection, stating that it believed that "there's ample evidence" to support such findings. (ST 453)

Campbell's objections to the pre-sentence report ended with this:

Mr. Lofton: Bear with me just one minute and let me be sure I covered everything. (Pause)

offender, Campbell receives a base offense level for his crime that is determined by reference to the statutory maximum for the offense of conviction. The statutory maximum for his violation of § 841 is life imprisonment. 21 U.S.C. § 841(b)(1)(A). This results in a base offense level of 37 under USSG § 4B1.1. With a base offense level of 37 and a criminal history category of VI, the guidelines range is 360 months to life in prison. USSG Ch.5 Pt.A. For Campbell's firearms conspiracy conviction, Count 49, the statutory maximum for his violation of § 924(o) is 20 years' imprisonment, which results in a base offense level of 32 under USSG § 4B1.1, with sentence eligibility of 210-262 months, which is reduced to 240 months by the statutory maximum. USSG § 5G1.1(c).

Thus, Campbell's total sentence eligibility was 570 months to life.

Sullivan was also convicted with Campbell of the Count 1 conspiracy to distribute more than 50 grams of cocaine base. The amounts of crack cocaine involved in his various other drug trafficking convictions, Counts 29, 30, 31 and 32, were a total less than 20 but more than 5 grams, which, when added to the 50 grams of Count 1, under USSG § 2D1.1, Application Note 6, yield a total quantity of cocaine base of more than 55 but less than 75 grams. Sullivan's base offense level for this amount of cocaine base conviction is 32. USSG § 2D1.1(c)(4). No two level enhancement is given for the possession of a firearm during these distribution offenses because that possession will be accounted for in Sullivan's sentence under USSG § 2K2.4, Application Note 2.

Sullivan's base offense level for Count 35, (the obliterated serial numbers) violation of 18 U.S.C. §§ 922(k) and 924(a)(1), and Count 49, (conspiracy to use a firearm in the execution of the Count 1 conspiracy) violation of 18 U.S.C. § 924(o), is 18. This represents a starting level of 12 under USSG § 2K2.1(a)(7) for Count 49, to which is added a two level increase under USSG § 2K2.1(b)(4) for his conviction in Count 35, possession of a firearm with an obliterated serial

Mr. Lofton: That's all I have, your Honor.

The Court: All right, sir. (Record Vol. III, ST 455)

number, and also a four level increase under § 2K2.1(b)(5) for possessing the firearm in connection with another felony, as he was convicted of Count 34. The jury was instructed they could not convict under Count 34 unless they convicted under Count 31 or Count 32. They convicted of both. So both of these increases are sustained by the facts found by the jury. We have not double counted Counts 35 and 49 for the initial starting level of 12.

Also, Sullivan is subject to a mandatory minimum additional sentence for his conviction of Count 34, a violation of 18 U.S.C. § 924(c), for his use of the firearm in connection with another crime. 18 U.S.C. § 924(c)(1)(A) calls for a mandatory minimum additional sentence of five years' imprisonment for an individual who uses or carries a firearm in connection with a drug trafficking crime, as Sullivan did. It is mandatory that this sentence run consecutively to any sentences imposed for the trafficking offenses. 18 U.S.C. § 924(c)(1)(D)(ii).

Sullivan has had no prior felony convictions, resulting in a criminal history category of I. Accordingly, the Sentencing Guidelines ranges for his convictions are 121-151 months for the drug convictions, 27-33 months for the firearms convictions in Counts 35 and 49, and 60 months for the firearms conviction in Count 34, for a total potential maximum of 244 months.

Accordingly, the maximum sentence that Campbell may receive based solely on the jury verdict is life imprisonment, while Sullivan may receive a maximum sentence of 244 months.

III.

At the sentencing hearing, the district court, as it was required to do, operating under the pre-*Booker* guidelines sentencing scheme, conducted its own fact-finding in order to arrive at Campbell and Sullivan's sentences.

For Campbell, the district court determined that Campbell was responsible for the murders of Toby Bing and Elshawndra Jones, and applied the first degree murder cross reference found at USSG

§ 2D1.1(d)(1), resulting in a base offense level of 43, under USSG § 2A1.1, which is an automatic life sentence under the Guidelines. USSG Ch.5, Pt.A. The district court sentenced Campbell to life imprisonment on Count 1 and additionally imposed a concurrent sentence of 240 months for Count 49, the firearms conspiracy charge. Ruling in the alternative, the court found that, should the murder cross-reference be disallowed, the drug quantity involved for Campbell was 1,858 grams of cocaine base. Using 1,858 grams of cocaine base presents a base offense level of 38 under USSG § 2D1.1(c)(1). Further, the court found that a dangerous weapon was possessed, and so added two levels under USSG § 2D1.1(b)(1). It also found that Campbell was an organizer or leader of the conspiracy, which adds four levels under USSG § 3B1.1(a), for a total offense level of 44. Offense levels higher than 43 are treated as identical to 43 for sentencing purposes. USSG Ch.5, Pt.A, Application Note 2. Accordingly, the district court issued an alternate sentence of life imprisonment based on its findings regarding the drug quantities, leadership role, and firearms possession.

For Sullivan, the district court applied the same murder cross reference, found a base offense level of 43, and sentenced Sullivan to life imprisonment for the drug conspiracy with the murder cross reference. Additionally, the district court imposed concurrent sentences of 240 months for Counts 29, 30, 31 and 49, a concurrent sentence of 360 months for Count 32, a concurrent sentence of 60 months for Count 35, and the mandatory additional consecutive sentence of 60 months for Count 34. In the alternative, the court determined that Sullivan was responsible for the distribution of 720 grams of cocaine base. This amount produces a base offense level of 36 under USSG § 2D1.1(c)(2), which has a sentencing range of 188 to 235 months under the Guidelines. The district court imposed the high end of the range, 235 months, for the drug charges, a concurrent sentence of 60 months for Count 35, and an additional consecutive sentence of 60 months for Sullivan's conviction in Count 34, for a total alternative sentence of 295 months.

*Campbell's Case*

As we have noted, *United States v. Booker*, 543 U.S. 220 (2005), was decided while this case was pending in this court, both Campbell

and Sullivan having been sentenced prior to January 12, 2005, the date of the *Booker* decision.

The principal holding of *Booker* which we consider is

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

543 U.S. at 244.

We are of opinion and hold there is no reversible error in the imposition of a sentence of life imprisonment on Campbell.

As we have related, Campbell was sentenced to life imprisonment under the then mandatory Guidelines sentencing scheme, using the first degree murder reference of USSG § 2D1.1(d)(1). After finding, among other things, that Campbell was responsible for 1,858 grams of cocaine base and that Campbell was an organizer or leader of the drug conspiracy, which added four levels to his basic sentencing level, and that a dangerous weapon was possessed, for which the district court added two additional levels to his basic sentencing level, the district court also imposed an alternate sentence of life imprisonment, should its sentence upon the murder reference be vacated.

We must vacate each of those two life sentences imposed on Campbell because each of them depended on facts other than prior convictions, necessary to support the sentence imposed and not established by a plea of guilty, or admission otherwise, or jury verdict. The murder reference was supported by facts, largely found by the district court at the sentencing hearing, relating to the murder of Bing and Jones, the rival drug dealers, and was established largely, even if not wholly, by the witnesses at the sentencing hearing and, in any event, had not been found by the jury. The same defect in a different form applies to the alternate sentence of life imprisonment imposed by the district court which is based in significant part on the finding of the district court that Campbell was responsible for 1,858 grams of

cocaine, and that Campbell was an organizer or leader of the drug conspiracy, which added four levels to Campbell's basic sentencing level. Neither the murder of Bing and Jones nor the organizer/leader question was considered by the jury. So, standing alone, those life sentences were subject to being vacated under the rule in *Booker* stated just above.

As we have demonstrated, however, using only the facts found by the jury, Campbell was, nevertheless, eligible for a life sentence. The jury found that Campbell was guilty of a conspiracy, as indicated in Count 1, to distribute more than 50 grams of cocaine base. The jury also found that Campbell was guilty of the firearms conspiracy under Count 49. Campbell, without objection to these parts of his presentence report, was found to have been previously found guilty of at least two felonies, which are crimes of violence which qualify him as a career offender under USSG § 4B1.1, resulting in a criminal history category of VI with a range of punishment of 360 months to life in prison under USSG Ch.5 Pt.A. All of these necessary facts for the imposition of a life sentence on Campbell were either found by the jury or were previous convictions, the latter a self-imposed exclusion of *Booker* upon its effect originating in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

In the case of *United States v. Hughes*, 401 F.3d 546-47 (4th Cir. 2005), we reasoned, following the decision in *Booker*

> In light of the excision of § 3742(e) by the Supreme Court, we will affirm the sentence imposed as long as it is within the statutorily prescribed range, see *Apprendi*, 530 U.S. at 490, and is reasonable, see *Booker*, 125 S.Ct. at 767.

The sentence imposed in this case, which we examine, was a life sentence imposed on Campbell. This life sentence is within the statutorily prescribed range. The sentence is within the Guidelines range of life imprisonment, and the sentence is reasonable. That is shown by our decision in *United States v. Green*, 436 F.3d 449, 456-57 (4th Cir. 2006), which holds that a sentence which is within the Guidelines range is presumed to be reasonable in the context of the meaning of reasonable in the *Booker* case. That same presumption is followed in terms in four other circuits, in *United States v. Williams*, No. 05-5416

(6th Cir. 2006); *United States v. Newsom*, 428 F.3d 685, 687 (7th Cir. 2005); *United States v. Tobacco*, 428 F.3d 1148, 1151 (8th Cir. 2005); *United States v. Mykytiuk* , 415 F.3d 606, 608 (7th Cir. 2005); and *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2005); and in principle in the Eleventh Circuit, *United States v. Talley*, 431 F.3d 784, 786-87 (11th Cir. 2005), but rejected in the First Circuit in *United States v. Jiminez-Beltre*, No. 05-1268 (1st Cir. 2006); and the Second Circuit in *United States v. Fernandez*, 443 F.3d 19, 26-28 (2nd Cir. 2006). We are thus of opinion that the said sentence so imposed was reasonable upon examination of the record and application of the presumption in *Green* we have just referenced.

Because the Court, in the case of *Williams v. United States*, 503 U.S. 193 (1992), decided a split in the circuits, on the question that

> When one or more of the stated grounds for departure is invalid, [may an] appellate court . . . affirm if sentence is still reasonable in light of remaining factors.

503 U.S. at 193,

> the Court reasoned, at p.204

> A sentence can thus be "reasonable" even if some of the reasons given by the district court to justify the departure from the presumptive guidelines range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure.
> (Quotations in original.)

The action of the district court in this case exceeds the requirements of *Williams*. A life sentence is permissible and within the Guidelines range, so the presumptive Guidelines range is not invalid. The district court, while it imposed the life sentence for a different reason, did not violate the Guidelines, and the presumption from *Newsom* we have followed in *Green* requires affirmance.

### Sullivan's Case

Sullivan's life sentence must be vacated because it is based on the same murder reference as was Campbell's with respect to the killing

of Bing and Jones, which was not found by the jury but by the district court. The alternate sentence of Sullivan of 295 months is based largely, even if not wholly, on the finding of the district court that Sullivan was responsible for 720 grams of cocaine base, a fact found by the district court but not by the jury. Sullivan's alternate sentence of 295 months exceeds his maximum eligible sentence of 244 months for matters considered by the jury or otherwise admitted. Thus, application of facts not found by the jury have had "a prejudicial effect on the outcome of a judicial proceeding." *White*, 405 F.3d at 223.

Sullivan's sentence must be vacated and his case remanded for resentencing.

## IV.

Apart from the sentencing questions, the defendants have raised the following questions with respect to their convictions, which we address in turn.

## A.

Campbell argues that statements introduced at trial and made by his co-conspirators were barred by *Crawford v. Washington*, 541 U.S. 36 (2004); that the government's introduction of proffer letters[3] and plea agreements of various cooperating defendants was improper; and that the district court failed to give a jury instruction concerning multiple conspiracies.

Campbell first challenges the introduction of testimony by various government witnesses with respect to Campbell's involvement in the drug conspiracy. These statements, Campbell argues, are testimonial in nature and thus barred by *Crawford*. The statements objected to were largely observations about the involvement of various other members of the conspiracy in the sale of drugs, such as repeating that other conspirators told the witness that they had purchased drugs from Campbell. While such statements may well have been admissible evi-

---

[3]A proffer letter is an agreement between the government and a defendant which refers to and, in fact, is a part of, an agreement to plead guilty made between the government and a defendant.

dence as statements by a co-conspirator during the course of and in furtherance of the conspiracy, see Fed. R. Evid. 801(d)(2)(E), they are not testimonial statements under *Crawford*. ". . . [N]ot testimonial — for example, [are] . . . statements in furtherance of a conspiracy." *Crawford*, 541 U.S. at 56. Not being testimonial statements, that evidence against Campbell was admissible, and we so hold. Accord: *Delaney v. United States*, 263 U.S. 586, 590 (1924).

Campbell also contends that the introduction into evidence of witnesses' plea agreements and proffer letters, along with references to them in closing argument, violated due process and his right to a fair trial. We do not agree.

The proffer letters do not place an overemphasis on whether the witness is telling the truth. Importantly, the district court correctly instructed the jury that it should weigh with caution the testimony of someone who has entered into a plea agreement with the government for immunity from punishment or personal advantage. The jury instruction stated that the testimony of such informers "must also be considered by you and weighed with great care, more so than the testimony of an ordinary witness. . . . [Y]ou must determine if an informer's testimony has been affected by the immunity which has been provided for him." The district court gave similar instructions for those who entered into plea agreements. The court instructed the jury that such a witness "has a motive to testify falsely." Those instructions serve to negate any implication that the witnesses were somehow more trustworthy for having entered into plea agreements with the government and were correctly given.

Regarding the introduction of the plea agreements, we have held that "it is generally recognized that the existence of a plea agreement may be elicited by the prosecutor on direct examination so that the jury 'may assess the credibility of the witness.'" *United States v. Henderson*, 717 F.2d 135, 137 (4th Cir. 1983). A prosecutor may neither vouch for nor bolster the testimony of a government witness in arguments to the jury. *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997). "Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is cor-

roborated by evidence known to the government but not known to the jury." *Sanchez*, 118 F.3d at 198.

Campbell argues that the government vouched for the plea agreements by stating in oral argument that "[i]t should be clear that the witness has far more of an incentive to tell the truth than to lie." This statement, however, does not fit the definition of either vouching or bolstering. It cannot be vouching, since the AUSA made no statement about her personal belief in the truth of the statement, only that, given the circumstances of a plea agreement, she argued that it is more in the subject's interest to be honest than to be dishonest. Likewise, it cannot be considered bolstering, as it does not refer to evidence not presented to the jury.

Finally, Campbell argues that the district court failed to instruct the jury on multiple conspiracies. Campbell claims the evidence at best showed multiple conspiracies, and not a single, unified one.

In its instructions to the jury, the district court instructed the jurors that

> the Government charged a particular conspiracy, and they've got to prove . . . that he was a member of the conspiracy charged in the indictment. And if they don't prove that, then you got to find him not guilty, even if you find that he was a member of some other conspiracy not charged in the indictment.

The district court continued that

> [p]roof that a Defendant was a member of some other conspiracy is not enough to convict unless the Government also proves beyond a reasonable doubt that the Defendant was a member of the conspiracy charged in the indictment.

Campbell argues that there was evidence of other drug conspiracies operating in the South Carolina-Georgia community in addition to the conspiracy charged in the indictment and that an instruction with respect to multiple conspiracies should have been given in a different

form than the one given by the district court. We are of opinion the instruction given by the district court, the essence of which we have quoted above, was correct and fair. We note especially that the district court gave a finding instruction in favor of Campbell if the government did not prove that "he was a member of the conspiracy charged in the indictment," he should be found not guilty.

We conclude that there was no error in Campbell's case under *Crawford v. Washington*; or the district court's instruction to the jury with respect to multiple conspiracies; or the introduction of proffer letters and plea agreements, either plain or otherwise.

B.

Sullivan challenges the sufficiency of the evidence upon which the jury based its conviction under Counts 34 and 49 of 18 U.S.C. § 924(c) for use and possessing a firearm in relation to a drug trafficking crime; under § 924(o) for conspiracy to do the same; and under 18 U.S.C. § 922(k), Count 35, for knowingly using and possessing a firearm with an obliterated serial number.

Where the error charged, as here, is insufficiency of the evidence to support the verdict, the verdict will be sustained if, when the evidence is viewed in the light most favorable to the government, there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

18 U.S.C. § 924(c)(1)(A) provides that an individual who "during and in relation to any . . . [federal] drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is subject to criminal punishment. In order to establish a violation of § 924(c), the evidence must tend to show that the firearm "furthered, advanced, or helped forward a drug trafficking crime." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). A trier of fact might include, for example, in its consideration whether the firearm furthered the drug crime by considering "'the type of drug activity that is being conducted, accessibility of the firearm, the type of

weapon . . . whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.'" *Lomax*, 293 F.3d at 705 (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)). Moreover, jurors are allowed to make common sense conclusions when drugs and firearms are found together due to the "unfortunate reality that drugs and guns all too often go hand in hand." *Lomax*, 293 F.3d at 706. A mere accidental or coincidental presence of a gun is not enough to satisfy this requirement; but, if its purpose is to protect or embolden the defendant, the statute is satisfied. *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (citing *United States v. Mitchell*, 104 F.3d 649, 654 (4th Cir. 1997)).

Here, there is sufficient evidence in the record to establish that the firearm that Sullivan possessed was in furtherance of his drug crimes. Witnesses testified that Sullivan regularly carried a firearm with him while he was selling drugs. For example, his co-defendant Rasheen Cutter testified that he had seen Sullivan with firearms, "every day" while Sullivan was selling drugs at an establishment named JB Club 2000. Likewise, Rosalind Hamilton, another co-defendant who had traveled to Savannah, Georgia with Sullivan to purchase crack, testified that Sullivan carried a pistol with him "almost all the time." These two witnesses both described one of Sullivan's weapons as a 9mm, the same type of weapon that was seized from Sullivan's person when Sullivan sold a quantity of crack to Roser. Although there is no evidence that Sullivan had brandished or fired that weapon, the jury was entitled to find that Sullivan carried it for his personal protection, given the dangerous nature of crack distribution.

The trial testimony likewise was sufficient to support the jury finding that there was a conspiracy between Sullivan and others, such as Campbell, to possess firearms. Testimony introduced against Sullivan's co-defendants revealed that they also regularly carried firearms. Additionally, the jury determined that these co-defendants were engaged in a crack distribution conspiracy with Sullivan. Taking this evidence in the light most favorable to the government, the jury was entitled to conclude that the possession of firearms, given the dangerous nature of the conspiracy, was a part of that conspiracy's common course of action.

18 U.S.C. § 922(k) makes it a crime "for any person knowingly . . . to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." The defendant must know of the alteration. *United States v. Haywood*, 363 F.3d 200, 206 (3d Cir. 2003) (collecting cases). Knowledge of defacement of the serial number may be inferred where the defendant has possessed the gun under conditions under which an ordinary man would have inspected the pistol and discovered the absence of a serial number. See *United States v. Moore*, 54 F.3d 92, 101 (2d Cir. 1995). As we have related, a 9mm Glock was one of the weapons of Sullivan and carried by him as he sold and trafficked in drugs. The jury was entitled to find, as it did, that he was aware of the removal of the serial number.

Additionally, the government presented the testimony of ATF Special Agent Kelly, a specialist in the business and marketing of firearms. The firearm, a Glock 9mm pistol, has serial numbers in several locations. Agent Kelly identified the location of the primary serial number on the frame of the pistol, and commented that "[t]hat is gone. That serial number has been taken off of the firearm." Also, he identified an area on the slide of the pistol that he said "may be a secondary location of the serial number." This mark was also obliterated. On cross-examination, Agent Kelly also identified the location of a serial number that remained intact on the barrel of the gun. Although this number remained, we are of opinion that it does not establish that the conviction was improper. Indeed, the statute does not require that all serial numbers be obliterated.

From the testimony, a reasonable juror could conclude that, because Sullivan regularly carried and possessed the weapon, he would have been expected to have examined the weapon and discovered, at least, that the primary serial number had been obliterated.

The last argument of Sullivan, that we need address only briefly, is that his connection with the conspiracy charged in Count I is supported only by evidence of sales of drugs which, standing alone, do not support his conviction. He relies on *United States v. Mercer*, 165 F.3d 1331 (11th Cir. 1999), for that proposition. While it is true that *Mercer* does recite that a single sale of narcotics is not probative evi-

dence of a conspiracy to deal in narcotics, even in *Mercer* evidence of multiple sales comes to the opposite conclusion. In any event, our decisions in *United States v. Banks*, 10 F.3d 1044 (4th Cir. 1993), and *United States v. Mills*, 995 F.2d 480 (4th Cir. 1993), are more favorable to the government and would ordinarily admit evidence of sales of narcotics as probative evidence of a conspiracy to deal in the same. Because the decisions, both in this Circuit and in the Eleventh Circuit, review the question of whether the evidence is relevant, at bottom they are discretionary decisions in which the exercise of our discretion is somewhat less favorable to Sullivan than is that of the Eleventh Circuit. We are of opinion that, even stretched, a comparison of those circuit decisions would not support any conclusion that there is a marked difference in the circuits. We are of opinion that that argument by Sullivan is without merit and that the evidence to support his conviction with respect to the conspiracy charged in Count 1 of the indictment is ample.

While we affirm the convictions of both Campbell and Sullivan and the sentence of Campbell, we vacate the sentence of Sullivan, as earlier set forth in this opinion, and remand the same for resentencing.

KING, Circuit Judge, concurring:

In addition to challenging their convictions, the defendants, Sean Thomas Sullivan and Kenneth Campbell, seek relief from the life sentences imposed on them in the District of South Carolina in July 2003 under the then-mandatory Sentencing Guidelines regime.[1] Sullivan and Campbell repeatedly objected to the sentencing procedures utilized by the court, contending that those procedures contravened the constitutional principles enunciated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). During the pendency of these appeals, the Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). In the wake of those decisions, we now know that a sentencing court commits statutory error if it treats the Guidelines as mandatory, rather

---

[1]Judge Duncan and I are pleased to concur in Judge Widener's opinion in these appeals, insofar as it relates to the issues raised concerning the defendants' convictions. I write separately, with the concurrence of Judge Duncan, on the sentencing issues only.

than as advisory. *See Booker*, 543 U.S. at 245-46; *United States v. White*, 405 F.3d 208, 215 (4th Cir. 2005). As explained below, Sullivan and Campbell preserved their claims of such statutory error by raising timely *Apprendi* objections at sentencing. Because the district court committed statutory error in sentencing Sullivan and Campbell, and its error was not harmless, we vacate the defendants' sentences and remand for resentencing.

## I.

## A.

Campbell was convicted on two charges: Count 1 for conspiracy to possess with intent to distribute and to distribute fifty grams or more of crack cocaine, in contravention of 21 U.S.C. § 846 (the "drug conspiracy offense"); and Count 49 for conspiracy to use, brandish, discharge, and possess firearms during and in relation to drug trafficking crimes, in violation of 18 U.S.C. § 924(o) (the "firearms conspiracy offense"). Meanwhile, Sullivan was also convicted of Count 1 for drug conspiracy and Count 49 for firearms conspiracy, and was further convicted on six other charges: Counts 29, 30, and 31 for distributions of less than five grams of crack, and Count 32 for possession with intent to distribute more than five grams of crack, all in contravention of 21 U.S.C. § 841 (collectively, the "drug distribution offenses"); Count 34 for using and carrying of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (the "firearm use offense"); and Count 35 for possession of a firearm with an obliterated serial number, in contravention of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (the "obliterated serial number offense").

Campbell's presentence report ("PSR") recommended a base offense level of 38 on the drug conspiracy offense, predicated on the finding that the offense involved 1.5 kilograms or more of crack cocaine. *See* USSG § 2D1.1(c)(1) (2001). The PSR also advocated a two-level enhancement for possession of a dangerous weapon, *id.* § 2D1.1(b)(1), and a four-level enhancement for being an organizer or leader of the conspiracy, *id.* § 3B1.1(a), which would result in a total offense level of 43 — the highest possible offense level under the Guidelines (carrying with it a mandatory life sentence no matter

the defendant's criminal history category).[2] The PSR further recommended imposing the cross-reference for first-degree murder, resulting in a mandatory offense level of 43. *Id.* §§ 2A1.1, 2D1.1(d)(1).[3] Campbell's PSR therefore recommended assigning him a total offense level of 43 on the Count 1 drug conspiracy offense.[4] Finally, based on the finding that he had at least two prior felony convictions of either a crime of violence or a controlled substance offense, the PSR characterized Campbell as a career offender and ascribed to him a criminal offense history category of VI. *Id.* § 4B1.1.[5]

As for Sullivan, his PSR recommended a base offense level of 36 on the combined drug conspiracy offense and drug distribution offenses, predicated on the finding that these offenses involved between 500 grams and 1.5 kilograms of crack. *See* USSG § 2D1.1(c)(2) (2001). As recommended for Campbell, however, the PSR proffered that Sullivan should be subject to the cross-reference

---

[2]Significantly, a life sentence was authorized under the applicable criminal statute for the Count 1 drug conspiracy offense. *See* 21 U.S.C. § 841(b)(1)(A).

[3]The proposed murder cross-reference was based on evidence that Sullivan and Campbell were involved in the murders of rival drug dealers Elshawndra Jones and Toby Bing in February 1999.

[4]On the firearms conspiracy offense in Count 49, Campbell's PSR recommended a base offense level of 24, predicated on the determination that Campbell had at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* USSG § 2K2.1(a)(2) (2001). The PSR further recommended, however, that the firearms conspiracy offense be combined with the drug conspiracy offense, and that Campbell be assigned the highest offense level of the counts in the group, i.e., offense level 43. *Id.* §§ 3D1.2(c), 3D1.3(a).

[5]Campbell's classification as a career offender — to which he posed no objections — required that his offense level on the drug conspiracy offense in Count 1 be at least 37. *See* USSG § 4B1.1 (2001) (providing that "[i]f the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply," and setting forth an offense level of 37 for a controlled substance offense — such as Campbell's — with a statutory maximum sentence of life). Of course, the PSR recommended an offense level greater than 37 on the drug conspiracy offense predicated on other findings and enhancements.

for first-degree murder and its corresponding offense level of 43. *Id.* §§ 2A1.1, 2D1.1(d)(1).[6] On the firearm use offense, the PSR maintained that Sullivan was subject to the minimum term of imprisonment required by the statute of conviction, 18 U.S.C. § 924(c), that being not less than five years, consecutive to any other sentence imposed. *Id.* § 2K2.4(a)(2). Lastly, the PSR assigned Sullivan a criminal history category of I.

### B.

After receiving evidence on the proposed murder cross-references in March and July of 2003, the sentencing court conducted a final sentencing hearing on July 15, 2003. Throughout the sentencing proceedings, the defendants repeatedly contended — both orally and in writing — that the court was constitutionally barred from finding facts outside the jury's verdict in applying the then-mandatory Guidelines. Sullivan and Campbell relied principally on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). The sentencing court correctly concluded, however, that the defendants' interpretation of *Apprendi* had previously been rejected by this circuit in *United States v. Kinter*, 235 F.3d 192, 198-202 (4th Cir. 2000).

Thus, during the final sentencing hearing on July 15, 2003, the dis-

---

[6]On Sullivan's combined firearms conspiracy offense in Count 49 and obliterated serial number offense in Count 37, the PSR recommended a base offense level of 12, *see* USSG § 2K2.1(a)(7) (2001), a two-level enhancement for the obliterated serial number, *id.* § 2K2.1(b)(4), and a four-level enhancement for use or possession of a firearm in connection with another felony offense, *id.* § 2K2.1(b)(5). With these enhancements, the total offense level on Sullivan's combined firearms conspiracy offense and obliterated serial number offense was 18. The PSR ultimately recommended combining these counts with the drug conspiracy and drug distribution offenses, and assigning Sullivan the highest offense level of all the counts in the group, i.e., offense level 43. *Id.* §§ 3D1.2(c), 3D1.3(a).

trict court found, by a preponderance of the evidence, the facts necessary to justify application of the PSRs' recommended sentencing enhancements. And the court acknowledged that it was "required to follow the law as set forth in the Guidelines, whether I agree with those Guidelines, along with whether I think they're good or bad." *Sullivan* J.A. 855.[7] That is, the court recognized that it was constrained to follow the then-mandatory Guidelines regime.

The court calculated Campbell's total offense level on the drug conspiracy offense as the maximum of 43, either by (1) imposing the murder cross-reference or (2) setting his base offense level at 38, predicated on the finding that the offense involved 1,858 grams of crack cocaine, and then applying the two-level enhancement for possession of a dangerous weapon and the four-level enhancement for being an organizer or leader of the drug conspiracy. *See Sullivan* J.A. 902-03 ("I just want the record to show that . . . in the event that I was in error in cross-referencing the murder, that because of the drug amount and because of his total Offense Level and Criminal History, that the identical sentence would be imposed by the Court."). Campbell thus faced a mandatory life sentence on the drug conspiracy offense no matter his criminal history category, which the court designated as VI. The court imposed a life sentence on Campbell on the drug conspiracy offense, as well as a concurrent sentence of twenty years on the firearms conspiracy offense.

The sentencing court similarly determined that Sullivan deserved the murder cross-reference and a mandatory life sentence on the drug conspiracy offense. The court imposed a life sentence on Sullivan on that offense, in addition to lesser concurrent sentences on the other drug and firearms offenses, and the mandatory five-year (i.e., sixty-month) consecutive sentence on the Count 34 firearm use offense. The court observed that if the murder cross-reference did not apply, Sullivan would not face a life term. Instead, the court announced that Sullivan would have a base offense level of 36 on the drug conspiracy offense, predicated on the finding that he was responsible for 720 grams of crack. With a criminal history category of I, the resulting sentencing range would be 188 to 235 months of imprisonment on the

---

[7]Our citations to "*Sullivan* J.A. —" refer to the contents of the Joint Appendix filed by Sullivan and the Government in Sullivan's appeal.

drug conspiracy offense (and other combined counts), for a total sentence of 248 to 295 months including the mandatory consecutive 60-month sentence on the firearm use offense. The court stated that absent the murder cross-reference it would have sentenced Sullivan to a total 295 months of imprisonment. *Sullivan* J.A. 923.

## II.

During the pendency of these appeals, the Supreme Court issued its decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) (holding that the State of Washington's mandatory sentencing guidelines contravened the Sixth Amendment), and *United States v. Booker*, 543 U.S. 220 (2005) (applying *Blakely* principles to the federal Sentencing Guidelines). Under *Booker*, there are two types of error. First, Sixth Amendment error occurs when a sentencing court enhances a defendant's sentence beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant. *See Booker*, 543 U.S. at 245; *United States v. White*, 405 F.3d 208, 215 (4th Cir. 2005). Second, statutory error occurs when a sentencing court treats the Guidelines as mandatory, rather than as advisory. *See Booker*, 543 U.S. at 245-46; *White*, 405 F.3d at 215. Because we conclude that the district court committed reversible statutory *Booker* error in sentencing both Sullivan and Campbell, we need not reach the issue of whether Sixth Amendment error also occurred.[8]

---

[8]Although we do not decide the Sixth Amendment issue, we observe that the Government initially conceded that such error occurred in sentencing both Sullivan and Campbell. The Government's concessions of Sixth Amendment error followed the defendants' assertions that — without any improper fact-finding by the court — Campbell's offense level on the drug conspiracy offense would have been 32 (resulting in a sentencing range of 210 to 262 months) and Sullivan's offense level on that same count also would have been 32 (carrying a sentencing range of 121 to 151 months). *Cf. United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005) (recognizing that Sixth Amendment error occurred when maximum Guidelines sentence authorized by jury verdict was twelve months, but court imposed forty-six-month sentence). During oral argument, however, the Government sought to withdraw its concession with respect to Campbell. The Government explained that it had previously overlooked Campbell's designation as a career offender, which carried with

Sullivan and Campbell properly preserved their claims of statutory *Booker* error by raising *Apprendi* at sentencing; thus, their claims are subject to harmless error review. *See United States v. Williams*, 445 F.3d 724 (4th Cir. 2006); *United States v. Rodriguez*, 433 F.3d 411, 415 (4th Cir. 2006). Applying this standard of review, they are entitled to relief if the statutory *Booker* error affected their substantial rights. *See Rodriguez*, 433 F.3d at 416. And "the burden is on the *Government* to show that such an error did *not* affect the defendant[s'] substantial rights." *Id.* The Government can make such a showing if the sentencing court indicated that it would not have imposed a lesser sentence under an advisory (rather than a mandatory) Guidelines regime. *Id.*

The Government is unable to make such a showing here. Although the district court announced "alternative" sentences for both Sullivan and Campbell, these alternatives reflected the court's calculations for each defendant solely under a mandatory Guidelines regime. Significantly, the court never indicated how it would have sentenced the defendants under an advisory Guidelines regime, taking into account not only the computations spelled out in the Guidelines, but also the factors outlined in 18 U.S.C. § 3553(a). *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (recognizing that, in the wake of *Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines" and then "shall consider that range as well as other relevant factors set

_____

it a minimum offense level of 37. At that offense level, with a criminal history category of VI, the resulting sentencing range would have been 360 months to life. Thus, according to the Government, no Sixth Amendment error occurred when the sentencing court imposed a life sentence on Campbell. In response, Campbell contended that the Government could not withdraw its previous concession of Sixth Amendment error. Campbell did not challenge the assertion that no such error actually occurred or his classification as a career offender. *Cf. United States v. Washington*, 404 F.3d 834, 842-43 (4th Cir. 2005) (recognizing that sentencing court may only look to certain sources in making factual findings about prior convictions without violating Sixth Amendment). Campbell's response leads us to doubt that his sentence contravened the Sixth Amendment. Nevertheless, as explained above, we need not reach this issue.

forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence"). And, under harmless error review, the court's silence on how it would have sentenced Sullivan and Campbell if the Guidelines had then been advisory must be interpreted in the defendants' favor. *See Rodriguez*, 433 F.3d at 416.

Accordingly, we are obliged to conclude that Sullivan and Campbell were prejudiced when the district court committed statutory *Booker* error in connection with their sentences by treating the Guidelines as mandatory. We thus vacate the defendants' sentences and remand for such further sentencing proceedings as may be appropriate.[9]

---

[9]We acknowledge that the defendants have raised other appellate contentions with respect to their sentences. Specifically, Campbell asserts that the sentencing court's findings with respect to the leadership role enhancement, the murder cross-reference, and drug quantity were clearly erroneous. Sullivan contends that the court's finding on drug quantity was clearly erroneous, and also that the court erred in applying the murder cross-reference based on facts found by a preponderance of the evidence (rather than by clear and convincing evidence). We decline to exercise our discretion to address these other alleged Guidelines-application errors, and leave those issues for the district court. *See Hughes*, 401 F.3d at 556 & n.15.