**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 06-4710

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUAN CARLOS BARRAGAN, a/k/a Kora, a/k/a
Quarta,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte. Graham C. Mullen, Senior
District Judge. (3:03-cr-00231-1)

---

Submitted: February 28, 2007          Decided: March 27, 2007

---

Before WILKINSON, MICHAEL, and SHEDD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Marcia G. Shein, LAW OFFICE OF MARCIA G. SHEIN, P.C., Decatur,
Georgia, for Appellant. Gretchen C. F. Shappert, United States
Attorney, Kevin Zolot, Assistant United States Attorney, Charlotte,
North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Juan Carlos Barragan appeals his convictions and sentence for conspiracy to possess with intent to distribute over five kilograms of cocaine and over one hundred kilograms of marijuana, in violation of 21 U.S.C. §§ 841, 846 (2000) (Count 1), possession with intent to distribute over fifty kilograms of marijuana, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (2000) (Count 5), and use and carrying of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c)(1) (West Supp. 2006) (Count 6). Finding no error, we affirm.

Barragan's first contention on appeal is that his conviction on Count 6 should be reversed for insufficient evidence, alleging that the Government failed to prove that the firearm found on Barragan during his arrest was used in furtherance of a drug trafficking crime. Barragan asserts that the Government did not demonstrate a nexus between his possession of the firearm and the drug trafficking activity, and that there was no evidence proving that the firearm was used in furtherance of such activity.

This court reviews the denial of a motion for acquittal de novo. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005), cert. denied, 126 S. Ct. 1925 (2006). Where, as here, the motion is based on a claim of insufficient evidence, the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Id.; see

- 2 -

<u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). This court has defined substantial evidence as evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. <u>Alerre</u>, 430 F.3d at 693. This court must consider circumstantial as well as direct evidence, and allow the Government the benefit of all reasonable inferences from the facts proven to those sought to be established. <u>United States v. Tresvant</u>, 677 F.2d 1018, 1021 (4th Cir. 1982). This court does not review credibility determinations on appeal. <u>See</u> <u>Glasser</u>, 315 U.S. at 80.

Section 924(c) requires proof that a defendant used or carried a firearm during and in relation to a drug trafficking crime, or that the defendant, in furtherance of any such crime, possessed a firearm. To sustain a conviction under § 924(c), the Government must present evidence indicating that the possession of the firearm "furthered, advanced, or helped forward a drug trafficking crime." <u>United States v. Lomax</u>, 293 F.3d 701, 705 (4th Cir. 2002). To establish this relationship between the firearm and the drug offense, the trier of fact may consider: "'the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and

circumstances under which the gun is found.'" Id. (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

Despite Barragan's assertion that the link between his gun and the drugs was coincidental, we find that there was substantial evidence linking Barragan's firearm to the underlying drug transaction. Before his arrest, officers found Barragan standing five feet away from one hundred pounds of marijuana. While securing Barragan, the arresting officer found a Beretta 9mm handgun "tucked down in his waistband," without a holster. Additionally, witnesses testified that Barragan frequently carried a 9mm handgun during drug transactions.[1] While Barragan noted at trial that he had a concealed handgun permit, that does not negate the fact that Barragan was in possession of a firearm in close proximity to a large amount of narcotics, the weapon was readily accessible in the waistband of his pants, and testimony established that Barragan almost always carried a 9mm handgun during drug

---

[1]Barragan contends that testimony relating to his possession of a firearm at any time other than the specific date identified in the indictment cannot be used to support the conviction, citing United States v. Randall, 171 F.3d 195, 209 (4th Cir. 1999) (holding that if a specific predicate offense is identified in the indictment, a conviction cannot stand on proof of an alternative predicate offense). However, Barragan's reliance on Randall is misplaced, as the testimony did not relate to the predicate offense, but rather was presented to establish that Barragan's firearm was regularly used in furtherance of his drug deals. See United States v. Sullivan, 455 F.3d 248, 260 (4th Cir. 2006) (finding that firearm was possessed in furtherance of drug crimes based on testimony indicating that defendant frequently carried handgun during drug transactions).

transactions. Given Barragan's frequent possession of a handgun during drug transactions and the obvious dangers involved in dealing with large amounts of narcotics, the evidence demonstrated a clear connection between his firearm and his involvement in drug activity. See Sullivan, 455 F.3d at 260 (jury was entitled to find that handgun was used for personal protection based on dangerous nature of drug dealing); Lomax, 293 F.3d at 706 ("Fact finders are not required to blind themselves to the unfortunate reality that drugs and guns all too often go hand in hand."). Therefore, we hold that there was sufficient evidence to support Barragan's conviction under § 924(c).

Barragan next asserts that the district court erred in determining his base offense level, as he was held responsible for 62 kilograms of cocaine and 71 kilograms of marijuana, resulting in a base offense level of 36.[2] Barragan asserts that the jury's verdict supported a much lower offense level, involving five to fifteen kilograms of cocaine, and that the significantly higher

---

[2]Additionally, Barragan contends that the preponderance of evidence standard should not have been applied in determining his sentencing enhancements, as the facts relied on by the court were not admitted by Barragan or found by a jury beyond a reasonable doubt. However, this court has determined that sentencing decisions made based on the preponderance of the evidence comport with the requirements of the Sixth Amendment. See United States v. Morris, 429 F.3d 65, 71 (4th Cir. 2005), cert. denied, 127 S. Ct. 121 (2006). Therefore, the district court applied the proper evidentiary standard in determining Barragan's sentence.

amount reached by the district court was based on unreliable testimony.

When reviewing the district court's application of the Sentencing Guidelines, this court reviews findings of fact for clear error and questions of law de novo. United States v. Green, 436 F.3d 449, 456 (4th Cir.), cert. denied, 126 S. Ct. 2309 (2006). In this case, the jury found that the charged conspiracy involved five kilograms or more of cocaine, and the PSR calculated that Barragan was responsible for a total of 62 kilograms. Barragan argued at sentencing, as he does on appeal, that this calculation was supported solely by the unreliable testimony of co-conspirators. The district court noted it would have been more sympathetic to Barragan's argument if the drug amounts were in fact based only on the testimony of informants and co-conspirators, but that "[t]his case is the result of [an] extensive, lengthy and very professional operative investigation. And much of what the corroborating witnesses say is, in fact, corroborated by the evidence."

The testimony presented at trial amply supported the district court's determination regarding the total amount of cocaine used to calculate the base offense level. Jose Orosco, who transported drugs for Barragan, testified at length regarding the nearly 80 kilograms of cocaine that he observed Barragan either buy or sell. David Martinez, who also worked for Barragan, testified

that he had seen Barragan with over 100 kilograms of cocaine. The testimony provided by these witnesses supported the information provided to the probation officer by a confidential source of information ("CSI"), who referred to three separate cocaine transactions involving Barragan that totaled at least eighteen kilograms. Based on the information provided to the probation officer by the CSI, as well as the 44 kilograms of cocaine discussed during a telephone conversation between Juan Barragan and Enrique Barragan, the district court adopted the PSR's calculation that Barragan was responsible for at least 62 kilograms of cocaine.

As the district court noted, the Government not only provided testimony from the co-conspirators regarding the drug amounts, but the DEA was also able to gather additional evidence through the use of recordings and wiretaps. While Barragan makes conclusory allegations in an effort to undercut the testimony provided by the co-conspirators, he presents nothing substantive that would call into question the credibility determinations made by the district court. See United States v. Jones, 356 F.3d 529, 537 (4th Cir. 2004) (quoting United States v. Moore, 242 F.3d 1080, 1081 (8th Cir. 2001)) (factual findings by trial court that are based on credibility of witnesses are "virtually unreviewable" when there are two permissible ways to view the evidence). In light of the testimony and evidence provided at trial, we hold that the

district court's determination as to the total amount of cocaine attributable to Barragan was not erroneous.

Barragan further contends that the district court erred by increasing his offense level by four levels due to his role as a "leader" in the conspiracy, pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(a).  At trial, Martinez testified that Barragan owned the garage where most of the drug transactions were carried out, was responsible for bringing additional people into his illegal operation, and that he was the "chief" and "head" of the organization.  Martinez also listed a number of individuals who worked for Barragan, including Barragan's brother and his nephew, who were described as "second" and "third" within the organization. Martinez further testified that when Barragan would leave for Mexico, his brother and nephew were left in charge of the drug operation.  The testimony provided by Orosco and Martinez provided the district court with adequate grounds to find that Barragan was the leader of the organization, as Barragan directed the other individuals and was identified as the head of operations.  While the district court did not specify whether the subject criminal activity "involved five or more participants" or was "otherwise extensive," as is required under § 3B1.1, the evidence clearly supported that Barragan's organization involved more than five participants.  Therefore, we find that the district court did not

err by increasing Barragan's offense level by four levels due to his organizational role within the conspiracy.

Finally, Barragan contends that the district court erroneously concluded that it lacked the authority to grant a variance from the Sentencing Guidelines range. In a post-Booker sentencing, the court must calculate the advisory Guidelines range and then consider whether that range serves the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006). Green, 436 F.3d at 456. In selecting a sentence that serves the § 3553(a) factors, "the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law." United States v. Moreland, 437 F.3d 424, 432 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006). If the resulting departure range does not adequately address the court's concerns, the district court can impose a variance sentence. Id. If the district court imposes a variance sentence, "[t]he district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range" in light of the factors in § 3553(a). Id.; Green, 436 F.3d at 456.

While Barragan relies on selective remarks made by the district court at sentencing, these statements do not sufficiently support a claim that the district court believed that it lacked the authority to grant a variance. The record, read in its entirety, confirms that the district court understood its authority to impose

a variance sentence, but declined to do so. The court heard from both Barragan and the Government on this issue, noted the advisory nature of the Sentencing Guidelines, and also recognized that the Guidelines already consider the § 3553(a) factors. See United States v. Johnson, 445 F.3d 339, 342-43 (4th Cir. 2006). The district court concluded that the evidence presented by Barragan at sentencing was not sufficient to diverge from the Guidelines range, and that given the presumption of reasonableness given to the Guidelines, the court was not "empowered" to grant a variance based on the facts of the case. See United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006) (variance must be supported by the facts of the particular case); Moreland, 437 F.3d at 434 (divergence from Guidelines range must be based on plausible reasons for doing so). Therefore, we find that the district court was aware of its authority to grant a variance sentence and committed no error in declining to depart from the Sentencing Guidelines range.

Accordingly, we affirm Barragan's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

- 10 -